2003 ME 5

**STATE of Maine**

v.

**David M. SYLVAIN.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 31, 2002.

Decided:. Jan. 14, 2003.

Stephanie Anderson, District Attorney, Julia Sheridan, Asst. Dist. Atty., Portland, for State.

Edmond Folsom, Michael Scott, Saco, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] The State of Maine appeals, pursuant to 15 M.R.S.A. § 2115–A(1) (Supp. 2002), from the decision of the District Court (Portland, *Goranites, J.*) granting David Sylvain's motion to suppress evidence obtained during field sobriety tests. The State argues that the state trooper had an objectively reasonable and articulable suspicion that Sylvain was driving under the influence of alcohol and therefore that the State's pursuit of further information through field sobriety tests was reasonable pursuant to Fourth Amendment principles. We vacate the order of suppression.

## I. BACKGROUND

[¶ 2] On January 26, 2002, at 10:45 P.M., a Maine State Police Trooper observed a truck traveling south on Interstate 295 with one headlight out. The trooper immediately pulled in behind the truck and signaled the driver to pull over. The driver did so without incident. When the trooper approached the truck, the driver partially rolled down the window. The trooper observed that the driver's eyes were bloodshot and asked him "if he had drank anything recently." The driver responded "two beers." The trooper then asked the driver to step from the vehicle and perform field sobriety tests.

[¶ 3] The driver of the vehicle was David Sylvain. Sylvain does not contest the officer's authority to pull him over as a result of the missing headlight. Rather, he argues that the officer had insufficient objective information upon which to require field sobriety tests.

[¶ 4] The motion judge found that the State proved the following facts: "the defendant drove at night with a headlight out, had bloodshot eyes, and admitted having two beers." The trial court also determined that "Trooper Hinckley subjectively entertained a concern that the Defendant was operating under the influence."

[¶ 5] Notwithstanding those findings, the trial court concluded that suppression was warranted as a result of our holding in *State v. Nelson*, 638 A.2d 720 (Me.1994). Specifically, the trial court held that "the law in Maine is that it is not illegal to consume alcohol and drive."

[¶ 6] Exercising its authority pursuant to 15 M.R.S.A. § 2115–A(1), the State has appealed the granting of that motion to suppress.

## II. DISCUSSION

A. Burden of Proof and Standard of Review Under Maine Law

[¶ 7] At a hearing on a motion to suppress evidence obtained in the course of a traffic stop, the State bears the burden of demonstrating that the officer's actions were objectively reasonable under the circumstances. *State v. Brown*, 675 A.2d 504, 505 (Me.1996).

[¶ 8] The proper standard of appellate review depends upon the challenges raised by the appellant. This variation in standards results from the motion court's obligation to resolve constitutional issues in two steps. "First, the [motion] judge must find 'historical facts.'" *State v. Ce-*

*falo*, 396 A.2d 233, 239 (Me.1979) (holding "historical facts" are "facts 'in the sense of a recital of external events and the credibility of their narrators.' ") (quoting *Brown v. Allen*, 344 U.S. 443, 506, 73 S.Ct. 397, 97 L.Ed. 469 (1953)). Since the motion court has had the opportunity to hear the witnesses and assess their credibility, we afford the court's findings concerning historical facts considerable deference. *Cefalo*, 396 A.2d at 239. Thus, we review the factual findings of the motion court to determine whether those findings are supported by the record, and only if the findings are clearly erroneous will they be set aside. *Id.* at 240.

[¶ 9] Second, the motion court must draw legal conclusions from these historical facts. *Id.* at 239. A challenge to the application of constitutional protections to historical facts is a matter of law that we review de novo. *See State v. Ullring*, 1999 ME 183, ¶ 8, 741 A.2d 1065, 1067. We are in the same position as the motion court to determine whether an application of the governing constitutional principles to the historical facts warrants a particular legal conclusion. *Cefalo*, 396 A.2d at 239. Moreover, we "[have] a special responsibility to exercise [our] independent judgment to determine the validity of legal conclusions that are dispositive of a defendant's claim that he has been denied fair treatment in a criminal proceeding." *Id.*

[¶ 10] Accordingly, a motion court's findings of historical fact will be overturned only when clearly erroneous; however, the legal conclusions drawn from the historical facts are subject to an independent examination by this court. *State v. Wood*, 662 A.2d 919, 920 (Me.1995); *State v. Cusack*, 649 A.2d 16, 18 (Me.1994); *see also Ornelas v. United States*, 517 U.S. 690, 697–99, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (reviewing constitutional questions de novo while employing the deferential clear error standard to review findings of fact).

[¶ 11] Here, the State challenges both the findings of fact and the application of the constitutional principles to those facts. In order to support a brief investigatory stop of a motor vehicle, such as the stop in this case, a police officer must have an objectively reasonable, articulable suspicion that either criminal conduct, a civil violation, or a threat to public safety[1] has occurred, is occurring, or is about to occur. The officer's suspicion that any of these circumstances exist must be " 'objectively reasonable in the totality of the circumstances.' " *State v. Nelson*, 638 A.2d at 722 (quoting *State v. Dulac*, 600 A.2d 1121, 1122 (Me.1992)). "The nature of the detaining officer's subjective suspicion and the nature of the observations upon which that suspicion is based are questions of fact." *State v. Fillion*, 474 A.2d 187, 190 (Me.1984). Whether an officer's suspicion is objectively reasonable is a pure question of law. *Nelson*, 638 A.2d at 722 (quoting *Fillion*, 474 A.2d at 190).

### B. Factual Findings

[¶ 12] The court found that Sylvain's vehicle was missing one working front headlight, that the officer observed bloodshot eyes, and that Sylvain admitted to having had two beers. Those facts are supported on the record and we do not disturb them.[2]

---

1. *See State v. Pinkham*, 565 A.2d 318, 319–320 (Me.1989) (holding "safety reasons" may be sufficient upon which to base a reasonable suspicion).

2. In a footnote, the court, without the benefit of a transcript of the proceedings, indicated that Sylvain had not been asked whether his consumption of the two beers was recent. In fact, the transcript reveals that the officer

[¶ 13] The court also concluded that the officer entertained a subjective concern that the defendant was operating under the influence. Again, we accept the trial court's factual finding on that point.

## C. Application of Law to the Facts

[¶ 14] The court correctly indicated, having found the facts known to the officer, and having concluded that the officer subjectively entertained a concern that Sylvain was illegally operating the vehicle under the influence of alcohol, that it was next required to determine whether the officer's suspicion was *"objectively* reasonable in light of all the circumstances." *Wood,* 662 A.2d at 920 (emphasis added).

[¶ 15] On the question of objectively reasonable suspicion, the court turned to our decision in *Nelson,* 638 A.2d 720, and concluded that it was not reasonable to suspect operation under the influence simply because the defendant had admitted drinking and had bloodshot eyes.

[¶ 16] The court concluded from *Nelson* that the mere admission to previously drinking alcohol by a person operating a vehicle is insufficient to give a law enforcement official authority to request a further brief intrusion into the driver's life through the performance of field sobriety tests.[3] This conclusion is

incorrect and arises from an intermingling of the separate concepts of legality and articulable suspicion. While it may not be a crime solely to consume an alcoholic beverage and then operate a motor vehicle, it is a crime to operate while impaired. Thus, the officer in a roadside stop is not focused on whether the operator was legally entitled to consume alcohol before operating the vehicle, but whether that consumption has resulted in any level of impairment. An officer deciding whether or not to ask an operator to demonstrate that the operator is not impaired in any way by the consumption of alcohol or drugs need only entertain a reasonable suspicion that impairment may exist.

[¶ 17] A reasonable suspicion is not the same as proof by a preponderance of the evidence or even probable cause to believe that impairment exists. *See State v. Webster,* 2000 ME 115, ¶ 7, 754 A.2d 976, 978; *State v. Lux,* 1999 ME 136, ¶¶ 9–15, 740 A.2d 556, 558–60. This standard for the brief roadside intrusion balances the driver's right to be free from excessive restraint by the State against the public's right not to be placed at risk by the criminal action of impaired driving. Field sobriety testing provides the officer with sufficient information to determine whether it is safe for the motorist to continue driving.

---

testified to having asked Sylvain if he had "drank anything recently" on direct examination and reiterated on redirect examination that he asked Sylvain to step out of his vehicle "because he had admitted to recently consuming beer." The defendant concedes that the court's reference to lack of evidence on this issue is erroneous. However, it does not affect our analysis here

3. Key to the court's decision to suppress the facts in this case was its determination based on its reading of *Nelson* that "the law in Maine is that it is not illegal to consume alcohol and drive." We understand the trial court to mean that it is not illegal to drink

*and then* drive. If the trial court read *Nelson* to hold that it is not illegal to consume alcohol while operating a motor vehicle, that reading is inaccurate. Prior to *Nelson,* the Legislature acknowledged the danger to the public associated with operating under the influence and made it illegal to consume alcohol while operating a motor vehicle. 29 M.R.S.A. § 2112 (repealed 1999). Since *Nelson,* the Legislature not only made illegal the consumption of alcohol in an automobile, but also the mere possession of an open alcohol container in an automobile on a public way. 29–A M.R.S.A. § 2112–A(2) (Supp.2002).

[¶ 18] When, as here, an officer has observed bloodshot eyes and has heard an admission from a driver that the driver has had two beers, it is objectively reasonable for that officer to entertain a suspicion that the driver may be impaired by the alcohol. Subjecting the driver to field sobriety tests following that admission does not offend the Fourth Amendment. To the extent that *Nelson* was read by the motion court otherwise, we clarify the holding in *Nelson*.

[¶ 19] On the facts found by the court, applying the law de novo to those facts, we conclude that the motion to suppress must be denied.

The entry is:

Order of suppression vacated. Case remanded for entry of an order denying the motion to suppress.