COMMONWEALTH *vs.* CHERYL A. BAZINET. No. 08-P-1681. April 13, 2010. *Constitutional Law,* Roadblock by police. *Search and Seizure,* Automobile, Roadblock by police. *Threshold Police Inquiry. Motor Vehicle,* Operating under the influence.

Cheryl Bazinet, the defendant, was stopped at a sobriety checkpoint on Route 20 in the town of Auburn on July 22, 2007. A State trooper working the checkpoint spoke with her and detected an odor of alcohol. Consequently, the trooper, although he had made no observations of the manner in which she had been operating her vehicle, directed her to an area adjacent to the checkpoint for administration of field sobriety tests. When Bazinet stepped out of the vehicle, the trooper observed that she had "glossy, bloodshot eyes" accompanied by "a strong odor of an intoxicating beverage on her breath as she spoke." Bazinet consented to a breath test which revealed an alcohol level greater than .08 percent, and she was charged with operating under the influence. See G. L. c. 90, § 24(1)(*a*)(1).

Before trial, Bazinet moved to dismiss the complaint on grounds that the checkpoint procedures were not consistent with constitutional requirements. Before hearing the motion, a judge of the District Court reported the case for an answer to two questions of law he said arose frequently in the District Court. See Mass.R.Crim.P. 34, as amended, 442 Mass. 1501 (2004); Mass.R. A.P. 5, as amended, 378 Mass. 930 (1979). See generally *Commonwealth* v. *Caracciola,* 409 Mass. 648, 650 (1991). The questions are these:

> "1. The Massachusetts State Police General Order (TRF-15) [which governed operation of the checkpoint] permits a trooper, with reason-able suspicion based upon articulable facts that the operator is OUI, to further detain an operator directing them from the screening area to the OUI checking area (Pit). Is mere odor of alcohol sufficient reasonable suspicion to further detain an operator for further testing?

> "2. Is the Massachusetts State Police guideline on sobriety checkpoints (general order TRF-15) as applied to the sobriety checkpoint stop in question on July 21, 2007 through the Division Commander's Order (06-DFS,056),[1] constitutionally valid?"

The general subject of the reported questions was discussed by the Supreme Judicial Court in *Commonwealth* v. *Murphy,* 454 Mass. 318 (2009), a case decided after the report. In essence, the court in *Murphy* held that sobriety checkpoint procedures carried out in a manner consistent with Massachusetts State Police General Order TRF-15, as supplemented by written operational instructions from the troop commander to the officer in charge of a specific checkpoint, met constitution standards. *Id.* at 328.

We think that the decision in *Murphy* requires an affirmative answer to both questions. Insofar as question one is concerned, General Order TRF-15 permits, and now requires, see *Murphy, supra* at 320 n.3, further screening after the initial checkpoint stop "[i]f there is reasonable suspicion, based upon articul-able facts, that the operator . . . is committing . . . an OUI violation." In *Murphy,* the troop commander's order, like the troop commander's order in

---

[1]This appears to be a typographical error. The Division Commander's Order included in the record appendix is numbered "07-DFS-56."

this case, stated that further screening after the initial stop "should be made" if the screening officer observed "any articulable sign of possible intoxication." *Murphy, supra* at 321. The court said that the "odor of alcohol" was one of the "clues of impaired operation" for which the screening officers were to check and which, if observed, would provide a basis for further screening and investigation. *Id.* at 320, 328.[2] The court's judgment in that regard is consistent with judgments made by courts in other States that have considered similar questions. See *State* v. *Rizzo*, 243 Mich. App. 151, 161 (2000) (holding that "an odor may give rise to a reasonable suspicion that the motorist has recently consumed intoxicating liquor, which may have affected the motorist's ability to operate a motor vehicle"); *Nickelson* v. *Kansas Dept. of Rev.*, 33 Kan. App. 2d 359, 367 (2004) (finding that odor of alcohol was sufficient to allow officer to conduct further investigation); State *vs.* Hernandez-Rodriguez, Ohio App. 11th Dist. No. 2006-P-0121 (Sept. 28, 2007) (explaining that "the 'strong odor' of alcohol, by itself, can trigger reasonable suspicion of driving under the influence").

Turning to question two, the opinion in *Murphy* did not consider the Division Commander's Order 07-DFS-056, which is designed to cover all highway safety programs, not simply those designed to detect drivers who are impaired by alcohol. From the record, however, it appears that the checkpoint the State police conducted in this case was governed both by General Order TRF-15 and by operational instructions contained in a letter from the troop commander to the officer in charge of the checkpoint, as well as by Order 07-DFS-056. Order TRF-15 and the operational instructions are, in all material respects, identical to the instructions discussed by the court in *Murphy*. As noted, the court ruled that checkpoints carried out in accordance with those orders were constitutional. Insofar as Order 07-DFS-056 adds something new to the instructional matrix, it imposes a "zero tolerance" enforcement policy with respect to all observed violations, thus reducing further the kind of discretionary enforcement that in other cases has been found constitutionally wanting. See, e.g., *Commonwealth* v. *McGeoghegan*, 389 Mass. 137, 143-144 (1983); *Commonwealth* v. *Anderson*, 406 Mass. 343, 347 (1989).

In light of the foregoing, the answer to reported questions one and two is "yes."

*So ordered.*

*James M. Milligan, Jr.*, for the defendant.
*Michelle R. King*, Assistant District Attorney, for the Commonwealth.

---

[2]The court's complete list of "clues of impaired operation" was "the condition of the eyes of the operator, the odor of alcohol, the speech of the operator, alcohol in plain sight in the vehicle, and other indicators." *Murphy, supra* at 320. Later in the opinion, the court said that "TRF-15 requires a predicate of reasonable articulable suspicion based on the observations of the initial screening officer (e.g., red eyes, slurred speech, container of alcohol in plain view)," omitting "odor of alcohol" from that list. *Id.* at 328. We think that nothing of consequence flows from the omission.