No. 2-09-0685     Filed: 11-29-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 09--DT--1751 |
| JOHN P. BRUNI, | ) ) ) | Honorable Daniel P. Guerin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the opinion of the court:

After being arrested for driving under the influence of alcohol (DUI) (625 ILCS 5/11--501(a)(2) (West 2008)), defendant, John P. Bruni, refused chemical testing to determine the content of alcohol in his blood. His refusal resulted in the statutory summary suspension of his driving privileges. See 625 ILCS 5/11--501.1(d) (West 2008). Defendant now appeals from an order denying his petition to rescind the suspension. We affirm.

Defendant was arrested after being stopped at a sobriety checkpoint. At the hearing on defendant's rescission petition, Officer Pogvara of the Lisle police department testified that he encountered defendant at the checkpoint at about 1 a.m. on May 2, 2009. He noticed nothing unusual about the manner in which defendant operated his vehicle. Pogvara greeted defendant and asked him for his driver's license and insurance card. Defendant provided both items. Pogvara testified that defendant's license was valid and that his insurance was up to date. Pogvara asked

defendant where he was coming from. Defendant responded that he had been at a karaoke party at a friend's house. Defendant added that there had been a karaoke contest and that he had won it. While speaking with defendant, Pogvara noticed a "faint" odor of alcohol coming from the passenger compartment of defendant's vehicle. He also noticed that defendant's eyes were "glossy," meaning (in Pogvara's words) "[t]hat there was like a haze over them" and that "[t]hey appeared glossy in nature." Pogvara asked defendant if he had been drinking. Defendant responded that he had had one beer. Pogvara then asked defendant if he would step out of the car and perform field sobriety tests. Defendant complied. Based on defendant's performance of the tests, Pogvara concluded that defendant was under the influence of alcohol, and he placed defendant under arrest.

Defendant argues that the period during which he was detained at the checkpoint for initial screening before being asked to step out of his vehicle and to perform field sobriety tests was unreasonably long and that the detention was therefore unlawful. During direct examination of the arresting officer by defendant's attorney, the following exchange occurred:

"Q. So *** from the time you initially spoke with [defendant] until you had him walk over to where you were about to conduct the field sobriety tests, approximately how much time had lapsed?

A. I couldn't say accurately, maybe possibly a matter of a few minutes.

Q. Would you say over or under ten minutes?

A. Probably under ten minutes.

Q. Over or under five minutes?

A. Probably under five minutes."

In determining whether stopping motorists at a sobriety checkpoint in the absence of individualized suspicion of wrongdoing is constitutionally permissible, courts have balanced the public interest against the intrusiveness to motorists who are stopped under a particular sobriety checkpoint program. See Michigan Department of State Police v. Sitz, 496 U.S. 444, 110 L. Ed. 2d 412, 110 S. Ct. 2481 (1990). In Sitz, the Court assessed the intrusiveness of a sobriety checkpoint stop partly in terms of its duration and intensity. Sitz, 496 U.S. at 452, 110 L. Ed. 2d at 421, 110 S. Ct. at 2486. Citing Sitz and People v. Bartley, 109 Ill. 2d 273 (1985), defendant argues that "the length of detention at a roadblock that has been found reasonable is between fifteen to twenty seconds." Defendant insists that, to pass constitutional muster, the "stop must be very brief as a general procedure in that the stop can be measured in a matter of seconds rather than minutes." Defendant's reliance on these decisions is misplaced. In Sitz, the Court noted that the average delay for each vehicle was 25 seconds. Sitz, 496 U.S. at 448, 110 L. Ed. 2d at 419, 110 S. Ct. at 2484. In Bartley, our supreme court noted that motorists stopped at a driver's license checkpoint "were detained for only 15 to 20 seconds, as long as there was no need for additional questioning." (Emphasis added.) Bartley, 109 Ill. 2d at 287-88; see also Commonwealth v. Yastrop, 564 Pa. 338, 768 A.2d 318 (2001) (upholding constitutionality of roadblock where police stopped drivers for roughly 30 seconds each and detained for field testing only those drivers who smelled of alcohol); State v. Leighton, 551 A.2d 116 (Me. 1988) (upholding constitutionality of roadblock where each stop lasted for less than a minute unless the officer detected the odor of alcohol or saw an open container of alcohol in the vehicle). Neither Sitz nor Bartley places any arbitrary limit on how long a motorist may be detained when an officer's observations during the initial screening warrant a further investigation.

The Sitz Court was careful to note that the case involved "only the initial stop of each motorist passing through a checkpoint and the associated preliminary questioning and observation by checkpoint officers." Sitz, 496 U.S. at 450-51, 110 L. Ed. 2d at 420, 110 S. Ct. at 2485. The Court added that "[d]etention of particular motorists for more extensive field sobriety testing may require satisfaction of an individualized suspicion standard." Sitz, 496 U.S. at 451, 110 L. Ed. 2d at 420, 110 S. Ct. at 2485. The leading fourth amendment scholar has stated that " 'the officer [conducting the sobriety checkpoint stop] should have an articulable suspicion that the motorist is intoxicated before detaining the motorist for an extended [DUI] investigation.' " 5 W. LaFave, Search and Seizure §10.8(d), at 378 (4th ed. 2004), quoting Note, 71 Geo. L.J. 1457, 1486 (1983). When such a suspicion exists, the detention is tantamount to an investigatory detention under Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), which held that a police officer may effect a limited investigatory stop where there exists a reasonable suspicion, based upon specific and articulable facts, that the person detained has committed or is about to commit a crime. Accord Commonwealth v. Murphy, 454 Mass. 318, 325-26, 910 N.E.2d 281, 288 (2009) ("The only factor that distinguishes a secondary screening stop from the more traditional Terry stop *** is that the information that gave rise to reasonable suspicion was obtained from observations made during the brief initial suspicionless stop at the sobriety checkpoint"). "[P]olice conduct occurring during an otherwise lawful seizure does not render the seizure unlawful unless it either unreasonably prolongs the duration of the detention or independently triggers the fourth amendment." People v. Baldwin, 388 Ill. App. 3d 1028, 1033 (2009).

Here, defendant argues that Pogvara unreasonably prolonged the seizure. In particular, defendant takes issue with the length of the interval from the moment he entered the checkpoint until

he was asked to exit his vehicle so that field sobriety tests could be administered. Pogvara testified that he could not accurately say how much time elapsed. When asked whether this period was over or under 10 minutes, he testified that it was "probably" under 10 minutes. When asked whether it was over or under five minutes, he testified that it was "probably" under five minutes. Thus, according to Pogvara's best recollection, defendant was most likely detained less than five minutes before being asked to submit to field sobriety testing. There is nothing in the record to suggest that Pogvara engaged in any conduct that was not reasonably related to the objective of confirming or dispelling the suspicion that defendant might be impaired as a result of alcohol consumption. Although defendant protests that Pogvara's "vague estimation of time cannot possibly render a roadblock stop 'brief,' " it was not the State's burden to establish the brevity of the stop. Rather, it was defendant's burden to establish that the stop was unreasonably prolonged. Cf. People v. Paige, 385 Ill. App. 3d 486, 490 (2008) (defendant bore burden of showing that roadblock was unreasonable). Accordingly, we find that defendant has failed to establish that Pogvara unreasonably prolonged the seizure.

Defendant also challenges the ruling of the trial court on the basis that Pogvara did not have a reasonable, articulable suspicion that he was under the influence of alcohol. Pogvara testified that defendant's eyes were "glossy." He further testified that he detected a faint odor of alcohol coming from the passenger compartment of defendant's vehicle and that defendant had stated that he had consumed one beer. Defendant first contends that "glossy" (as opposed to "glassy") eyes are not a sign of intoxication. As the State points out, however, the trial court found that, in its experience, the terms are sometimes used interchangeably. Indeed, there is case law to support the trial court's observation. In People v. Hood, 213 Ill. 2d 244 (2004), one witness described the defendant's eyes

as "glassy and bloodshot" (Hood, 213 Ill. 2d at 248), while another described his eyes as "bloodshot and 'glossy' " (Hood, 213 Ill. 2d at 249). However, in holding that the evidence was sufficient to sustain the defendant's conviction of reckless homicide, the Hood court indicated that both witnesses had testified that the defendant's eyes were "glassy and bloodshot." Hood, 213 Ill. 2d at 263.

Defendant further argues that the faint odor of alcohol coming from the passenger compartment of his vehicle, and his admission to Pogvara that he had one beer, indicated only that he had consumed alcohol, not that he was under the influence of alcohol. Because driving after consuming alcohol is not illegal in itself (see People v. Brodeur, 189 Ill. App. 3d 936, 943 (1989) (McLaren, J., dissenting) ("Mere consumption of alcoholic beverages does not establish intoxication")), defendant insists that there was no basis for administering field sobriety tests. We are not aware of any Illinois decisions, nor have any been called to our attention, that address the propriety of administering field sobriety tests to a motorist stopped at a sobriety checkpoint under circumstances similar to those present here. However, this court has approved the administration of field sobriety tests based on similar indicia of intoxication following a stop for a routine traffic violation. In Village of Lincolnshire v. Kelly, 389 Ill. App. 3d 881 (2009), the motorist was stopped for speeding. During the officer's initial conversation with the motorist, she exhibited no problems with her speech and was able to comply with the officer's orders without any problems. However, the officer noted a "strong" odor of alcohol and the motorist admitted having one glass of wine. Thereafter, the officer asked the motorist to exit the car and perform field sobriety tests. Based on this evidence, we determined that the officer had a reasonable articulable suspicion that the motorist had committed DUI and thus the administration of the field sobriety tests was justified. Village of Lincolnshire, 389 Ill. App. 3d at 886-87.

Moreover, cases from other jurisdictions are instructive with respect to the circumstances under which the administration of field sobriety tests to a motorist stopped at a sobriety checkpoint is warranted. In Commonwealth v. Bazinet, 76 Mass. App. Ct. 908, 924 N.E.2d 755 (2010), the court held that the "mere odor of alcohol" gives rise to reasonable suspicion warranting further detention of a motorist stopped at a sobriety checkpoint. The Bazinet court noted that the Supreme Judicial Court of Massachusetts had upheld the constitutionality of a checkpoint procedure under which a motorist would be subjected to further screening after the initial stop if the screening officer observed " 'any articulable sign of possible intoxication.' " Bazinet, 76 Mass. App. Ct. at 908-09, 924 N.E.2d at 757, quoting Murphy, 454 Mass. at 321, 910 N.E.2d at 285. The Bazinet court further noted that "[t]he [Murphy] court said that the 'odor of alcohol' was one of the 'clues of impaired operation' for which the screening officers were to check and which, if observed, would provide a basis for further screening and investigation." Bazinet, 76 Mass. App. Ct. at 909, 924 N.E.2d at 757, quoting Murphy, 454 Mass. at 320, 328, 910 N.E.2d at 284, 289.

In People v. Rizzo, 243 Mich. App. 151, 622 N.W.2d 319 (2000), it was held that a strong odor of an intoxicant on a motorist's breath, standing alone, is a sufficient basis for detaining the motorist to conduct field sobriety testing. Rizzo, 243 Mich. App. at 152, 622 N.W.2d at 320-21. Because the arresting officer testified that the defendant's breath smelled strongly of alcohol, the Rizzo court rejected the defendant's argument that the odor might have been "created by the consumption of desserts, candy, or mouthwash containing trace amounts of alcohol." Rizzo, 243 Mich. App. at 160, 622 N.W.2d at 324. The defendant further contended that the odor of alcohol on her breath did not necessarily mean that her blood alcohol content exceeded the legal limit. Although the Rizzo court agreed with the contention, it held that in order to detain a motorist for

field sobriety tests, the officer "merely must have a reasonable suspicion that the motorist has consumed intoxicating liquor, which may have affected the motorist's ability to operate a motor vehicle." Rizzo, 242 Mich. App. at 161, 622 N.W.2d at 325.

In Thompson v. State, 303 Ark. 407, 797 S.W.2d 450 (1990), a police officer approached a parked vehicle occupied by the defendant and a woman. The defendant volunteered that he had been to a club and was taking his girlfriend home. Smelling alcohol on the defendant's breath, the officer asked the defendant to step out of the vehicle. The defendant stumbled and was unable to perform a field sobriety test. The Thompson court rejected the defendant's argument that an unlawful seizure occurred when the officer approached his vehicle. After explaining that the encounter was consensual, the Thompson court stated:

> "The 'seizure' of [the defendant] occurred only after the officer addressed [the defendant] and noticed the odor of alcohol after [the defendant] volunteered that he had been at a club. Then, the officer had a reasonable suspicion that [the defendant] had committed or was about to commit a DWI and properly asked him to exit his car." (Emphasis added.) Thompson, 303 Ark. at 410, 797 S.W.2d at 452.

We are aware that courts in Kansas and Ohio have reached the opposite result. See City of Hutchinson v. Davenport, 30 Kan. App. 2d 1097, 54 P.3d 532 (2002) (smell of alcohol on defendant's breath while he was at police station because the police had "picked up" his daughter, combined with his false statement to an officer that he was walking--not driving--home, did not give rise to a reasonable suspicion that defendant was intoxicated and too impaired to drive); State v. Dixon, No. 2000--CA--30 (Ohio App. December 1, 2000) (unpublished) ("The mere detection of an odor of alcohol, unaccompanied by any basis, drawn from the officer's experience or expertise, for

correlating that odor with a level of intoxication that would likely impair the subject's driving ability, is not enough to establish that the subject was driving under the influence"); see also State v. Spillers, No. 1504 (Ohio App. March 24, 2000) (unpublished).[1] We believe, however, that the decisions from Massachusetts, Michigan, and Arkansas cited above reflect the better view. Notwithstanding defendant's argument that driving after consumption of alcohol is not inherently criminal, we conclude that defendant's admission that he had consumed a beer, coupled with the officer's testimony that he detected the odor of alcohol emanating from the passenger compartment of defendant's vehicle and the officer's observation that defendant's eyes were "glossy," was sufficient to justify the relatively minor intrusion of requesting that a properly stopped motorist step out of a vehicle to perform field sobriety tests. "Indeed, an officer faced with these facts would be derelict in his duties if he chose not to conduct a further investigation." Village of Plainfield v. Anderson, 304 Ill. App. 3d 338, 342 (1999); see also Village of Lincolnshire, 389 Ill. App. 3d at 887.

Because we find that the circumstances here were sufficient to create a reasonable articulable suspicion that defendant was driving under the influence of alcohol, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

BOWMAN and O'MALLEY, JJ., concur.

---

[1] We note that defendant has cited several Florida trial court decisions. Because these decisions do not create precedent under Florida law (Wood v. Fraser, 677 So. 2d 15, 19 (Fla. App. 1996)), we decline to consider them.