2012 ME 12

**STATE of Maine**

v.

**Mallory McPARTLAND.**

Supreme Judicial Court of Maine.

Argued:  Nov. 9, 2011.
Decided:  Feb. 2, 2012.

Eugene M. Sullivan Jr., Esq. (orally), Law Office of Joseph M. Baldacci, Bangor, for appellant Mallory McPartland.

R. Christopher Almy, District Attorney, and Hunter Umphrey, Student Intern (orally), Prosecutorial District V, Bangor, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

Majority: SAUFLEY, C.J., and ALEXANDER, LEVY, and GORMAN, JJ.

Dissent: SILVER, MEAD, and JABAR, JJ.

GORMAN, J.

[¶ 1]   Mallory McPartland appeals from a judgment of conviction entered in the Unified Criminal Docket (Bangor, *Studstrup, J.*) upon her conditional guilty plea to operating under the influence (Class D) (OUI), 29–A M.R.S. § 2411(1–A)(A), (5) (2011), following the denial of her motion to suppress evidence.  McPartland argues that the suppression court erred in concluding that the police officer she encountered at an OUI roadblock had a reasonable articulable suspicion of impairment that was sufficient to justify additional sobriety screening.  First, we hold that the

suppression court correctly concluded that satisfaction of the reasonable articulable suspicion standard justifies directing a motorist to secondary screening following an initial roadblock stop. Then, we affirm its finding and conclusion that the officer had reasonable suspicion to refer McPartland to secondary screening in this case.

## I. BACKGROUND

[¶ 2] Between the hours of about 9:00 p.m. on August 27 and about 3:00 a.m. on August 28, 2010, the Old Town Police Department conducted an OUI roadblock, or sobriety checkpoint, on Stillwater Avenue in Old Town. Officer Christine McAvoy was among six officers assigned to the roadblock detail. The officers on the roadblock detail were under instructions to stop every vehicle traveling in both the eastbound and westbound lanes on Stillwater Avenue that night. Officer McAvoy testified that officers were instructed to approach each vehicle as it stopped at the roadblock and have a "brief" conversation with the operator, which in most cases did not extend beyond two minutes.

[¶ 3] At approximately 2:00 a.m., Officer McAvoy observed a vehicle approaching the roadblock faster than the vehicles she had observed earlier. She estimated its speed at thirty-five miles per hour, and she testified that the speed limit was twenty-five miles per hour. The vehicle stopped properly, however, and Officer McAvoy saw no other operation of the vehicle that concerned her.

[¶ 4] When the vehicle stopped, Officer McAvoy introduced herself to the driver, McPartland, and explained that the Old Town Police Department was conducting an OUI safety checkpoint that night. The suppression court found that Officer McAvoy did not observe the "smell of alcohol, slurred speech, open container, watery eyes, or any other of the usual indicia of alcohol consumption." In conversing with Officer McAvoy, McPartland stated that she had been to a Bangor restaurant or pub and consumed "a martini" at about 10:00 p.m. Based on McPartland's admission that she had consumed alcohol and the officer's observation that McPartland had been speeding as she approached the checkpoint, Officer McAvoy directed McPartland to pull to the side of the road for additional questioning and screening.

[¶ 5] At the suppression hearing, the parties stipulated that McPartland was not challenging the constitutional validity of the roadblock.[1] Rather, McPartland asserted that Officer McAvoy had not had sufficient justification to refer McPartland to the side of the roadway for additional screening. The court ultimately concluded that McPartland's admission of alcohol consumption, coupled with Officer McAvoy's estimate that McPartland had approached the roadblock at an elevated speed, "taken together are sufficient to provide a reasonable suspicion of at least some limited impairment." The suppression court thus denied McPartland's motion. McPartland timely appeals pursuant to 15 M.R.S. § 2115 (2011), U.C.D.R.P.—Bangor 11(a)(2), and M.R.App. P. 2.

## II. DISCUSSION

[¶ 6] In this case of first impression, we determine what constitutional standard law enforcement authorities must apply when deciding whether a motorist who has

---

1. McPartland conceded at the hearing on her motion to suppress that the procedures utilized by the Old Town Police Department in conducting the OUI roadblock on Stillwater Avenue satisfy the test for constitutional reasonableness and validity. *See generally Mich.* *Dep't of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990); *State v. Kent,* 2011 ME 42, ¶¶ 11–13, 15 A.3d 1286; *State v. McMahon,* 557 A.2d 1324, 1325–26 (Me.1989); *State v. Leighton,* 551 A.2d 116, 117–19 (Me.1988).

been lawfully stopped at a sobriety checkpoint may be detained for secondary screening. After adopting this standard, we conclude that the suppression court did not err in denying McPartland's motion.

## A. Reasonable Articulable Suspicion and OUI Roadblocks

[¶ 7]  Although properly executed OUI roadblocks withstand constitutional scrutiny, we have not yet addressed what constitutional standard governs referral of a motorist to secondary screening at these checkpoints. When the United States Supreme Court decided *Michigan Department of State Police v. Sitz* in 1990, it addressed only the constitutionality of "the initial stop of each motorist passing through a checkpoint and the associated preliminary questioning." 496 U.S. 444, 450, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). The *Sitz* Court did, however, suggest that continued "[d]etention of particular motorists for more extensive field sobriety testing *may* require satisfaction of an individualized suspicion standard." *Id.* at 451, 110 S.Ct. 2481 (emphasis added). Since *Sitz,* several other appellate courts and a leading Fourth Amendment scholar have stated that the reasonable articulable suspicion standard applies when analyzing the appropriateness of an officer's decision to direct a motorist stopped at a sobriety checkpoint to secondary screening. *See, e.g., United States v. William,* 603 F.3d 66, 70 (1st Cir.2010) (concluding that a sobriety checkpoint was reasonable in part because following an initial checkpoint stop "further investigation occurred only if individualized suspicion developed"); *Mullinax v. State,* 327 Ark. 41, 938 S.W.2d 801, 806 (1997); *People v. Bruni,* 406 Ill.App.3d 165, 346 Ill.Dec. 84, 940 N.E.2d 84, 86–87 (2010); *Commonwealth v. Murphy,* 454 Mass. 318, 910 N.E.2d 281, 287–89 (2009); *Commonwealth v. Bazinet,* 76 Mass.App. Ct. 908, 924 N.E.2d 755, 757 (2010); *State v. Eggleston,* 109 Ohio App.3d 217, 671

N.E.2d 1325, 1331 (1996); 5 Wayne R. LaFave, *Search and Seizure* § 10.8(d) at 378–79 (4th ed. 2004) (stating that a law enforcement officer conducting the initial sobriety checkpoint stop "should have an articulable suspicion that the motorist is intoxicated before detaining the motorist for an extended DWI investigation" (quotation marks omitted)).

[¶ 8]  Applying the reasonable suspicion standard comports with our prior decisions concerning the constitutional propriety of a motorist's continued detention after a lawful stop based on a civil traffic infraction. In those cases, we have required the State to establish that the officer had a reasonable articulable suspicion of impairment before the officer extended the motorist's detention in order to undertake field sobriety tests. *State v. King,* 2009 ME 14, ¶ 6, 965 A.2d 52 (quoting *State v. Wood,* 662 A.2d 919, 920 (Me.1995)); *see also Murphy,* 910 N.E.2d at 288 (stating that "[t]he only factor that distinguishes a secondary screening stop from the more traditional *Terry* stop on the roadway or sidewalk is that the information that gave rise to reasonable suspicion was obtained from observations made during the brief initial suspicionless stop at the sobriety checkpoint.").

[¶ 9]  In our most recent OUI roadblock case, we intimated that when a motorist who has been stopped during a lawfully conducted initial roadblock is referred to a secondary screening area, our analysis might include a reasonable suspicion component. *See State v. Kent,* 2011 ME 42, ¶ 4, 15 A.3d 1286 (noting that an officer receiving vehicles diverted to his station during an OUI roadblock would check the drivers for signs of intoxication and run a basic license check, permitting the stopped motorists to drive away if no violations were found); *see also State v. Leighton,* 551 A.2d 116, 117 (Me.1988) (stating that an OUI "roadblock site provided ample room in the paved breakdown lane for

police cars and for vehicles whose operators were suspected of OUI to pull completely out of the travel lanes").

[¶ 10] Given the authority from other appellate courts that have addressed the question presented in this appeal, as well as our own cases interpreting the Fourth and Fourteenth Amendments of the United States Constitution and article I, section 5 of the Maine Constitution, we conclude that an officer questioning a motorist stopped at the initial roadblock must have an objectively reasonable basis for suspecting that the motorist is driving under the influence before the officer can refer the motorist to secondary screening for impairment.

[¶ 11] Therefore, it was incumbent on Officer McAvoy to have harbored "an objectively reasonable, articulable suspicion that either criminal conduct, a civil violation, or a threat to public safety [had] occurred, [was] occurring, or [was] about to occur" before she directed McPartland to the secondary screening area for continued OUI investigation. *See State v. Sylvain*, 2003 ME 5, ¶ 11, 814 A.2d 984 (footnote omitted).

**B. Applying the Reasonable Articulable Suspicion Standard**

[¶ 12] We undertake a two-step inquiry when determining whether the State has carried its burden of demonstrating that an officer's actions during the course of a traffic stop "were objectively reasonable under the circumstances." *Id.* ¶ 7. First, we determine whether the motion court's "historical facts" are supported by the record, according the court's findings considerable deference, and setting those findings aside only if they are clearly erroneous. *Id.* ¶ 8. Second, after making that determination, we review de novo the motion court's conclusion that the officer's subjective suspicion was objectively reasonable as a matter of law. *See id.* ¶¶ 9–10.

[¶ 13] Here, we review for clear error the suppression court's finding that Officer McAvoy subjectively suspected McPartland of driving while impaired. *See id.* ¶ 13. Thus, we will affirm if there is any competent evidence in the record to support its finding. *See id.* Our review of the motion hearing transcript confirms that competent evidence supports the suppression court's finding.[2]

[¶ 14] Contrary to McPartland's assertions on appeal, her admission to consuming "a martini" was not Officer McAvoy's only basis for referring her for secondary screening. Two other facts testified to by Officer McAvoy and found by the court create the necessary indicia of suspicion to justify Officer McAvoy's referral of McPartland to the secondary screening area: the time of night and her speed approaching the checkpoint.

[¶ 15] A driver's admission that she has consumed alcohol may be considered by a police officer in determining whether the officer has a reasonable articulable suspicion that the driver might be impaired. In addition, operation of a vehicle during the early hours of the morning,[3]

---

2. The dissent urges us to conclude that Officer McAvoy could not, as a matter of law, have harbored a subjective suspicion that McPartland was impaired. Dissenting Opinion ¶ 20. Our review for clear error does not permit us to substitute our interpretation of Officer McAvoy's testimony for that of the fact-finder.

3. The trial court expressly identified only McPartland's speed and her admission in reasoning that McAvoy had an objectively reasonable articulable suspicion that McPartland was impaired. The trial court also found, however, that the incident occurred at 2:00 a.m.; thus, we are permitted to consider this fact in our legal analysis. *See State v. Gorman*, 2004 ME 90, ¶ 41, 854 A.2d 1164 ("A

*see State v. Brown,* 675 A.2d 504, 505 (Me.1996), and speeding can both be suggestive of impairment, *cf. State v. Menard,* 2003 ME 69, ¶¶ 2, 12, 822 A.2d 1143. The totality of the circumstances in this case created a reasonable articulable suspicion that McPartland was operating her vehicle under the influence of intoxicating substances that was sufficient to justify the secondary screening.

[¶ 16] By centering her argument on her admission to consuming a single martini, McPartland implicitly focuses on convictions predicated on evidence of operation with a blood alcohol concentration above the legal limit, ignoring the reality that no specific blood alcohol level is required to sustain a conviction. *See* 29-A M.R.S. § 2411(1–A)(A) (2011) (proscribing the operation of a motor vehicle "(1) [w]hile under the influence of intoxicants; *or* (2) [w]hile having an alcohol level of 0.08 grams or more . . . .") (emphasis added). A driver is operating under the influence if her mental or physical faculties or senses are impaired to the slightest degree or to any extent. *See State v. Webster,* 2000 ME 115, ¶ 7, 754 A.2d 976; *State v. Bradley,* 658 A.2d 236, 237 (Me.1995). An objectively reasonable articulable suspicion that a driver is operating her vehicle under the influence, even to the slightest degree, is sufficient to refer the driver for secondary screening for impairment.

[¶ 17] When McPartland approached the checkpoint at 2:00 a.m., traveling at a rate that was ten miles per hour over the speed limit, and then admitted to consuming alcohol, she created an objectively reasonable suspicion that she was driving while impaired. The suppression court properly denied her motion to suppress the evidence resulting from the stop.

---

trial court action, proper under the law, may be affirmed, even if for a reason different than

The entry is:

Judgment affirmed.

JABAR, J., with whom SILVER and MEAD, JJ., join, dissenting.

[¶ 18] I respectfully dissent because the officer's suspicion and justification for referring McPartland to secondary screening was based on McPartland's statement that she had consumed one alcoholic beverage, not that McPartland was potentially committing the crime of operating under the influence. I agree that the reasonable articulable suspicion standard is the correct legal standard to apply in roadblock procedures. However, I disagree with the conclusion that the reasonable suspicion standard was satisfied on the facts of this case.

[¶ 19] We have traditionally undertaken a two-part inquiry in determining whether the State has carried its burden of proving "that the officer's actions [during the course of a traffic stop] were objectively reasonable under the circumstances." *State v. Sylvain,* 2003 ME 5, ¶ 7, 814 A.2d 984. First, we review for clear error "[a] court's factual determination of an officer's subjective suspicion of operating under the influence and the facts upon which that suspicion is based[.]" *State v. King,* 2009 ME 14, ¶ 6, 965 A.2d 52 (citing *Sylvain,* 2003 ME 5, ¶¶ 8–11, 814 A.2d 984). Second, we review de novo the court's "determination of whether the [officer's] suspicion was objectively reasonable." *Id.*

[¶ 20] Officer McAvoy testified that she relied on two facts to justify referring the defendant to secondary screening: McPartland's "speed coming to the roadblock and the fact that she had had some-

---

that given by the trial court.").

thing to drink." On the basis of her own testimony, we should conclude that Officer McAvoy could not have harbored a legitimate, subjective concern that McPartland was operating under the influence at the time of the initial roadblock stop. Officer McAvoy testified, and the suppression court found in its recitation of the facts, "that if she had a reasonable suspicion that the operator of a vehicle had been *drinking*, she [would] . . . direct that vehicle to a secondary area for further examination." [4]

[¶ 21] I agree that an admission to consuming alcohol is a factor in the calculus of whether a motorist may be subject to continued detention and additional sobriety screening following a lawfully conducted stop. However, an officer engaging a motorist at an OUI roadblock stop who justifies secondary screening under the misapprehension that she need only have a "reasonable suspicion" that the motorist has been "drinking" has not employed the "reasonable suspicion" standard as we have traditionally applied it. Having used a lower subjective threshold than would ordinarily be required to sustain an extended OUI investigation, Officer McAvoy's articulated basis for referring McPartland to secondary screening has the effect of eviscerating our long-held view that an officer must have a subjective suspicion that a motorist is potentially committing the *crime* of *operating under the influence* before the officer may continue the detention. *Id.* ¶ 6. As a consequence, Officer McAvoy's "subjective concern" can only be characterized as one

that McPartland had consumed alcohol, not that the consumption had in any way impaired her ability to operate a vehicle.

[¶ 22] There is also no dispute that the justification for the initial stop was the roadblock itself and not McPartland's alleged speed as she approached.[5] This is not to say that the trial court's finding of elevated speed was clearly erroneous. Officer McAvoy's initial, subjective "concern" over McPartland's alleged speed was merely incidental, if not entirely ancillary, to her belief that she could refer a motorist stopped at the roadblock to secondary screening if she harbored a reasonable suspicion that a person was "drinking" rather than a reasonable suspicion that a person was operating under the influence. Officer McAvoy testified that McPartland properly slowed and stopped at the roadblock and that she did not otherwise equate McPartland's speed approaching the roadblock with the type of "erratic driving or swerving" that would normally be indicative of a motorist's impaired faculties. It is evident that McPartland's purported speed played only an incidental role in Officer McAvoy's articulated reason for referring her to secondary screening.

[¶ 23] Because Officer McAvoy initially employed the incorrect legal standard in deciding to refer McPartland to secondary screening, it follows that her suspicion cannot then be determined to be " '*objectively* reasonable in light of all the circumstances.' " *Sylvain*, 2003 ME 5, ¶ 14, 814 A.2d 984 (quoting *State v. Wood*, 662 A.2d

4. Officer McAvoy similarly testified on cross-examination that if she had performed an ordinary traffic stop, she would have conducted field sobriety tests whenever the stopped motorist admitted to consuming one drink.

5. It bears mentioning that Officer McAvoy conducted a "visual estimate" of the speed of McPartland's vehicle as it approached the roadblock, and ascertained that the vehicle

was traveling at a rate of thirty-five miles per hour. There is no dispute that the roadblock was located in a twenty-five-miles-per-hour zone. Officer McAvoy clarified on cross examination that she learned visual speed estimation techniques as part of her radar detection training course and stated that she was trained and certified to make visual estimates of speed "within five miles per hour."

919, 920 (Me.1995)). This is especially true where, as here, an officer engaging a motorist at a lawful roadblock stop did not observe any indicia of intoxication or impairment. *See State v. Nelson*, 638 A.2d 720, 721–22 (Me.1994) (holding that an officer who had observed a motorist consume a single sixteen-ounce can of beer over the course of forty-five to fifty minutes, without observing any other observations of physical impairment or erratic driving, had not acquired the requisite degree of suspicion to initiate an investigatory traffic stop of the motorist's vehicle).

[¶ 24] If McPartland had been pulled over for speeding, and the investigating officer had not detected any signs of impairment or intoxication, as was the case here, any continued detention or administration of field sobriety testing would offend the reasonable suspicion standard followed by this Court in cases such as *Sylvain* and *King*. The outcome should not be different in this case simply because the initial stop of the defendant occurred at a lawfully conducted OUI roadblock. Accordingly, I conclude that the court should have granted McPartland's motion to suppress.