STATE OF MAINE
PISCATAQUIS, SS.

Docket No. 16-00004

STATE OF MAINE      )
                        )
                        )
v.                )    **ORDER on MOTION TO SUPPRESS**
                        )
                        )
BENJAMIN MCCOMBER,    )
         Defendant.    )

This matter came before the Court on June 27, 2016 on the Defendant's Motion to Suppress. Ms. Campbell appeared for the State. The Defendant appeared and was represented by Attorney Silverstein. The Court denied the Motion to Suppress from the bench, but later informed counsel it was reconsidering the denial. The parties provided memoranda for the Court's consideration.

After full reconsideration, the Court determines that it was not the denial of the motion, but rather the recitation of the reasons for the denial, with which the Court was not comfortable. Therefore, the Motion remains denied.

The pertinent facts are straightforward:
1. On January 1, 2016 at 1:58 a.m., Officer Warner of the Dover Police Department was on routine patrol traveling in an easterly direction on West Main Street in Dover, ME;
2. As he was passing by a side street, Officer Warner observed a vehicle "buried" head-first in a snow bank on the side street[1]. The vehicle was "reasonably far" into the snow bank;
3. The officer immediately turned his vehicle around to return to the vehicle in question;
4. As he approached the side street, he observed the vehicle that had been in the snow bank being operated easterly on Main Street. He also noted the "void" in the snow bank where he had just seen the vehicle. About 20 to 30 seconds passed between seeing the vehicle in the snow bank and seeing the vehicle operating on Main Street; and
5. Officer Warner immediately turned his vehicle around again, activated his blue lights and stopped the vehicle. The vehicle was stopped within 1 to 1 ½ minutes after the officer first saw the vehicle. Officer Warner did not note any erratic operation of the motor vehicle on Main Street, nor any equipment violations.

---

[1] On direct examination, Officer Warner very clearly testified that the vehicle was "head-first" in the snow bank. Later in his testimony, Officer Warner was asked by Mr. Silverstein whether the rear of the vehicle was in the snow bank, and Officer Warner replied, to the effect: yes, when I drove by, the rear of the truck was toward me.

1

"The Fourth Amendment to the United States Constitution and article I, section 5 of the Maine Constitution protect motorists from being unreasonably stopped by police. For a traffic stop to be constitutional, 'a police officer must have an objectively reasonable, articulable suspicion that either criminal conduct, a civil violation, or a threat to public safety has occurred, is occurring, or is about to occur." *State v. Sasso*, 2016 ME 95. "To conduct a constitutionally permissible traffic stop, an officer must have, at the time of the stop, 'an articulable suspicion that criminal conduct has taken place, is occurring, or imminently will occur, and the officer's assessment of the existence of specific and articulable facts sufficient to warrant the stop [must be] objectively reasonable in the totality of the circumstances.'" *State v. Donatelli*, 2010 ME 43, ¶ 11, (quoting *State v. Burgess*, 2001 ME 117, ¶ 7, 776 A.2d 1223, 1227).

Articulable suspicion is a low standard. See *State v. Porter*, 2008 ME 175. "The only requirement we have imposed on the reasonable articulable suspicion standard is that the officer's suspicion be more than mere speculation or an unsubstantiated hunch". *Id.* The suspicion need not reach the level of having probable cause. *State v. Vaughn*, 2009 ME 63. Application of this standard properly "balances the driver's right to be free from excessive restraint by the State against the public's right not to be placed at risk by an impaired driver." *Porter.* Additionally, an officer need not have objective evidence of impairment, but need only to "entertain a reasonable suspicion that impairment may exist". State v. *Sylvain, 2003 ME 5.*

Moreover, an officer may stop a vehicle for safety concerns alone. See *State v. Pinkham,* 565 A.2d 318, 320 (Me.1989). In *Pinkham,* the Court held that stopping a driver who went straight through an intersection despite being in a turn lane was proper for "safety purposes to advise him of his improper use of the intersection".

Turning to the facts in this case, when asked about seeing the truck in the snow bank, Officer Warner testified that "he had a couple of things on his mind", those being safety (whether the vehicle was safe to drive or any other property had been damaged) and the driver being intoxicated. When asked why he stopped the vehicle, the officer testified that he had a couple of reasons "in his head", those again being safety and the possibility of the driver being intoxicated. There is no requirement that an officer testify: "I had a suspicion", rather the officer must be able to articulate that he had a reason to believe that criminal conduct was occurring and/or there was a threat to public safety. See *State v. Cusack,* 649 A.2d 16, 18 (Me. 1994) (for a stop to be reasonable, the officer must actually entertain a "concern" and the "concern" must be reasonable). The Court is satisfied that Officer Warner articulated having an actual suspicion of the driver being OUI and there being damage to the vehicle which would have had safety implications. The Court is particularly satisfied that, while the officer could have been more precise about his suspicion, he had far more than an unsubstantiated hunch or mere speculation. This was not a random stop.

Having determined that the officer articulated a suspicion that criminal conduct was occurring and/or there was a threat to public safety, the court must next determine whether the officer's suspicion was objectively reasonable in light of the circumstances.

The Court is satisfied that the officer had an objectively reasonable, articulable suspicion to stop the vehicle for a suspicion that the operator was operating a motor vehicle while under the

2

influence of intoxicants. It was 1:58 a.m. on New Years day.[2] While there are many reasons for a motor vehicle to be off the roadway in a snow bank, operating while under the influence of intoxicants is one possible reason. There was no evidence that the road conditions were icy or otherwise poor in the area where the vehicle was in the snow bank. The officer saw the vehicle "reasonably far" into a snow bank. The Court is satisfied these factors are sufficient for the officer to have a reasonable, articulable suspicion that the operator was under the influence of intoxicants.

The Court is further satisfied that the officer had an objectively reasonable, articulable suspicion to stop the vehicle due to safety concerns that the vehicle might be damaged and therefore present a safety issue. Clearly, the vehicle in question had been in some sort of accident, having been driven into or having slid into a snow bank. The officer determined that the vehicle was "reasonably far" into the snow bank. The vehicle left a void in the snow bank when it was driven away. The Court is satisfied that these factors are sufficient for the officer to have reasonable safety concerns about the condition of the vehicle, which he adequately articulated.

The Court finds that any suspicions the officer had about property damage other than to the motor vehicle itself were not reasonable. There was no evidence there was anything in or near the snow bank before the accident and the officer did not observe any property damage when he saw the void in the snow bank after the accident.

The Court is satisfied that this stop was not pretextual. See *Pinkham* (finding that stopping the driver who went through intersection despite being in turn lane was proper, and not pretextual, even though the stop materialized into an OUI stop); *State v. Izzo*, 623 A.2d 1277, 1280-81 (Me. 1993) (holding that stopping for one taillight was not pretext, and officer could turn taillight stop into an OUI stop when he gained articulable suspicion of OUI while at the driver's window); *State v. Webber*, 2000 ME 168 (vacating suppression of stop based on vehicle having only one operational brake light).

Therefore, the Court is satisfied that the officer had objectively reasonable articulable suspicion to stop the Defendant's vehicle on January 1, 2016.

The Motion to Suppress is denied.

The Clerk shall enter this Order upon the docket by reference.

Dated: August 9, 2016

Ann M. Murray, Justice
Maine Superior Court

---

[2] In *State v. McPartland*, 2012 ME 12, the Court noted, among other factors, the late hour – 2:00 a.m. – as one of the factors supporting the reasonable suspicion that the driver may be impaired.