PEOPLE v RIZZO

Docket No. 219360. Submitted August 2, 2000, at Detroit. Decided November 3, 2000, at 9:00 A.M.

Mary N. Rizzo was charged in the 46th District Court with operating a motor vehicle while under the influence of intoxicating liquor or while having an unlawful blood alcohol level after she failed field sobriety tests, a preliminary breath test, and Breathalyzer tests administered by a state police trooper who initially stopped the defendant for driving an automobile with defective equipment, but who eventually decided to test the defendant's sobriety after detecting the smell of intoxicants on her breath. On motion by the defendant, the court, Susan M. Moiseev, J., suppressed evidence of the test results and dismissed the charge against the defendant, ruling that the trooper did not have a reasonable suspicion that the defendant was driving while under the influence of intoxicating liquor. On appeal by the prosecution, the Oakland Circuit Court, Denise Langford Morris, J., affirmed the district court's decision. The prosecution appealed by leave granted.

The Court of Appeals *held*:

The defendant was subjected to two investigative stops. The first stop was for defective equipment and was indisputably supported by a reasonable suspicion of a defective equipment violation by the defendant. The second stop occurred when the trooper instructed the defendant to get out of her vehicle and perform roadside sobriety tests. The second detention was justified by a reasonable suspicion that the defendant was driving under the influence of intoxicating liquor because a strong odor of intoxicants on a motorist's breath, standing alone, can provide a police officer with a reasonable, articulable, and particularized suspicion that the motorist was driving while under the influence of intoxicating liquor.

Reversed and remanded for further proceedings.

CRIMINAL LAW — OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF INTOXICATING LIQUOR — REASONABLE SUSPICION — SMELL OF INTOXICANTS ON BREATH.

A strong odor of intoxicants on a motorist's breath, standing alone, can provide a police officer with a reasonable, articulable, and particularized suspicion that the motorist has been driving while under

the influence of intoxicating liquor or while having an unlawful blood alcohol level and thus can provide the officer with reasonable cause to order the motorist to get out of the vehicle and perform roadside sobriety tests (MCL 257.625[1]; MSA 9.2325[1]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *David Gorcyca*, Prosecuting Attorney, and *Daniel L. Lemisch*, Chief, Appellate Division, for the people.

*James L. Feinberg*, for the defendant.

Before: SMOLENSKI, P.J., and WILDER and METER, JJ.

SMOLENSKI, P.J. In this case, we consider whether a police officer may request a motorist to perform roadside sobriety tests solely on the basis of a strong odor of intoxicants apparent on the motorist's breath. We conclude that such an odor, standing alone, is sufficient to provide a police officer with a reasonable, articulable, and particular suspicion that the motorist has consumed intoxicating liquor, which may have affected the motorist's ability to operate a motor vehicle. Accordingly, we reverse the decisions of the lower courts suppressing the relevant evidence and dismissing the charges against defendant.

On August 28, 1998, at approximately 12:40 A.M., Michigan State Police Trooper Dennis Dillard was on highway patrol near the Southfield Freeway and Lodge Freeway interchange, driving a fully marked patrol car. He observed a blue Geo Prizm with a broken rear taillight, which was showing white light to the rear. Dillard decided to stop the vehicle for a defective equipment violation and pulled it over to the side of the freeway.

Dillard approached the vehicle and spoke with defendant, who was the vehicle's driver and sole

occupant, through the open driver's side window. Dillard requested defendant's driver's license, registration, and proof of insurance, which she produced. He explained that he had stopped her vehicle because of the broken taillight, and she volunteered that the taillight had been broken two weeks previously, when the car was parked in front of her brother's house. During this conversation, Dillard detected a strong odor of intoxicants on defendant's breath. He therefore asked her to get out of the vehicle and perform roadside sobriety tests to determine whether she was intoxicated. It is uncontested that Dillard asked defendant to perform the roadside sobriety tests solely on the basis of the strong odor of intoxicants on her breath, and not because she was driving or acting in any way that suggested intoxication.

Dillard instructed defendant to perform several sobriety tests, including a one-leg stand, a finger count test, an alphabet test, and a number counting test. Because he believed that defendant's performance on these tests indicated intoxication,[1] Dillard asked defendant to submit to a preliminary chemical breath analysis test (PBT). After defendant registered 0.11 percent on the PBT, Dillard placed her under arrest for operating a motor vehicle under the influence of intoxicating liquor. Dillard then transported defendant to the Ferndale police station, where he administered two Breathalyzer tests. On both tests,

---

[1] According to Dillard, defendant failed the field sobriety tests in the following particulars: (1) while performing the one-leg stand, defendant's balance was shaky and she put her foot down sooner than instructed, (2) on the finger count test, defendant counted forwards instead of backwards, (3) on the alphabet test, defendant's speech was slurred and she paused for approximately one minute between letters T and U, and (4) on the number count test, defendant miscounted and repeated numbers.

defendant registered a blood alcohol content of 0.12 percent.

The prosecutor charged defendant with one count of operating a motor vehicle while under the influence of intoxicating liquor/unlawful blood alcohol level (OUIL/UBAL), MCL 257.625(1); MSA 9.2325(1). In the district court, defendant moved to suppress the results of the roadside sobriety tests, the PBT test, and the Breathalyzer test, arguing that the police officer lacked a proper basis for instructing her to get out of her vehicle and perform the sobriety tests. The district court granted defendant's motion to suppress the relevant evidence and dismissed the charge against her, reasoning as follows:

> Just a bad smell without asking any questions like where are you coming from[,] a bar? Did you have any alcohol? Without any of that and without bad driving and without the fumbling that you sometimes see and without testifying—I didn't hear there was blood shot eyes; I didn't hear anything else as typically testified to for justifying giving the field sobriety test, and if there's no justification for giving [the] field sobriety test there's no justification for the PBT, and there's no justification for the breathalyzer. Motion is granted.

The prosecutor appealed the district court's decision to the circuit court, which affirmed. Applying a standard of review de novo, the circuit court concluded that the strong odor of intoxicants, standing alone, did not provide the police officer with reasonable cause to instruct defendant to get out of her vehicle and perform roadside sobriety tests.[2] The

---

[2] The circuit court's opinion is somewhat unclear with respect to what standard the court applied to the police officer's conduct. Although the circuit court referenced the requirements of *Terry v Ohio*, 392 US 1; 88 S

prosecutor appeals to this Court by leave granted. We reverse and remand for further proceedings consistent with this opinion.

Generally, this Court will not disturb a trial court's ruling at a suppression hearing unless that ruling is clearly erroneous. *People v Burrell*, 417 Mich 439, 448; 339 NW2d 403 (1983). "However, the underlying issue before us is 'the strict application of a constitutional standard to uncontested facts. Application of constitutional standards by the trial court is not entitled to the same deference as factual findings.'" *People v Bordeau*, 206 Mich App 89, 92; 520 NW2d 374 (1994), quoting *People v Nelson*, 443 Mich 626, 631, n 7; 505 NW2d 266 (1993). Accordingly, we decide this constitutional question de novo.

In *People v Christie (On Remand)*, 206 Mich App 304, 308; 520 NW2d 647 (1994), this Court explained the standard applicable to a police officer's investigative stop of a criminal suspect:

> It is well established that brief investigative stops short of arrest are permitted where police officers have a reasonable suspicion of ongoing criminal activity. *Terry v Ohio*, 392 US 1, 16; 88 S Ct 1868; 20 L Ed 2d 889 (1968); *People v Faucett*, 442 Mich 153, 168; 499 NW2d 764 (1993). The totality of the circumstances test is to be used in cases involving investigative stops. *Id.*, citing *United States v Cortez*, 449 US 411; 101 S Ct 690; 66 L Ed 2d 621 (1981). The *Cortez* Court warned against overly technical reviews of a police officer's common-sense assessment of the probability that criminal activity is afoot. *Faucett, supra* at 168.

---

Ct 1868; 20 L Ed 2d 889 (1968), and discussed whether the police officer had reasonable cause to order defendant out of the vehicle, the court concluded its analysis by stating that "[t]he smell of intoxicants alone is not sufficient *probable cause* to administer field sobriety tests and PBT." [Emphasis added.]

In determining whether the police officer's suspicion for making the investigative stop was reasonable, "[c]ommon sense and everyday life experiences predominate over uncompromising standards." *Nelson, supra* at 635-636. Deference should be given to the police officer's experience and the known patterns of certain types of lawbreakers. *Id.* at 636. In *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996), our Supreme Court further explained the reasonable suspicion required in order to justify a *Terry* investigative stop: "Reasonable suspicion entails something more than an inchoate or unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause."

If an investigative stop of an automobile is proper, the officer is "permitted to briefly detain the vehicle and make reasonable inquiries aimed at confirming or dispelling his suspicions." *People v Yeoman*, 218 Mich App 406, 411; 554 NW2d 577 (1996), citing *Nelson, supra* at 637. In this case, the state police trooper properly stopped defendant's vehicle for the defective equipment violation.[3] However, defendant contends that a second investigative stop occurred when the officer instructed her to get out of the vehicle and perform the roadside sobriety tests. As a result, defendant argues that the second stop must be analyzed separately to determine whether the police officer complied with the requirements of *Terry, supra.* We agree.

In *Burrell, supra,* our Supreme Court considered a similar factual situation. In that case, the defendants'

---

[3] Defendant does not contest that the taillight was broken or the propriety of the officer's decision to stop her vehicle for a defective equipment violation.

vehicle was properly stopped for a defective equipment violation. While investigating that violation, the police officers began to suspect that the vehicle was stolen, and detained defendants while seeking further information about the suspected crime. Our Supreme Court treated this factual situation as involving two separate detentions, the first involving the defective equipment violation and the second involving the suspicions that an unrelated crime had been committed. The Court explained that such a subsequent detention, after a legal stop of a vehicle, must be analyzed under the *Terry* standard:

> However, since a stop almost inevitably leads to a brief detention for questioning, we draw guidance from these decisions as to the standard applicable to a brief detention *on an unrelated matter* following an otherwise lawful stop. Proceeding from the premise that a brief detention is at least as intrusive for Fourth Amendment purposes as a stop, we conclude that a brief detention for questioning is permissible if based on a reasonable and articulable suspicion of criminal activity. [*Burrell, supra* at 456-457 (emphasis in original).]

*Burrell* is helpful in deciding the present case because that decision makes clear that a police officer need not turn a blind eye to new indications of criminal activity that he observes after stopping a motor vehicle for an unrelated matter. If the officer's new observations support a reasonable, articulable, and particular suspicion that criminal activity is afoot, the police officer is permitted to take those circumstances into account during a brief detention, to either confirm or dispel the new suspicions. *Id.*

In this case, when Dillard conversed with defendant through the vehicle's open window, he detected

a strong odor of intoxicants on her breath. At that point, the focus of his investigative stop changed from the defective equipment violation to a suspicion that defendant may have been operating a motor vehicle while under the influence of intoxicating liquor. Because this suspicion was unrelated to the reason why Dillard had initially stopped defendant's vehicle, we must analyze these facts as presenting two separate detentions. Defendant concedes that the first detention, the stop for the defective equipment violation, was justified under *Terry*. Therefore, the question presented is whether the second detention in this case was justified under that standard. In order to make that determination, we must decide whether the strong odor of intoxicants on a motorist's breath, standing alone, can provide a police officer with a reasonable, articulable, particularized suspicion that the motorist was driving while under the influence of intoxicating liquor. We believe that it does.

First, the prosecutor relies on an unpublished decision of the Wisconsin Court of Appeals, *State v Franson-Hopka*, 181 Wis 2d 1005; 513 NW2d 708 (1994), for the proposition that the odor of intoxicants is sufficient to create a reasonable suspicion that a motorist has been driving while intoxicated, and justifies a police officer's decision to require roadside sobriety tests. However, we agree with defendant that the Wisconsin case is factually distinguishable from the present case. In *Franson-Hopka*, a police officer observed a vehicle being driven in the evening hours with only one operational headlight. The officer stopped the vehicle for this defective equipment violation. While speaking with the defendant, who was driving the vehicle, the officer noticed a strong odor of intoxi-

cants on her breath. He questioned the defendant about the odor and she admitted that she had been drinking wine at a nearby restaurant. Additionally, the defendant spoke so softly that the police officer could not understand much of her explanation. The officer then instructed the defendant to get out of her vehicle and perform roadside sobriety tests.

On these facts, the Wisconsin court held that the police officer had a reasonable suspicion of intoxication under *Terry, supra,* sufficient to justify his request that the defendant perform roadside sobriety tests. However, the police officer in *Franson-Hopka* observed factors indicating the possibility of intoxication, in addition to the strong odor of intoxicants on the defendant's breath. Therefore, we do not find that decision helpful in determining whether the strong odor of intoxicants, standing alone, is sufficient to create a reasonable suspicion that the driver is intoxicated.

The prosecutor also relies on the language of MCL 257.625a(2); MSA 9.2325(1)(2) to justify the police officer's actions in this case. At the time of defendant's arrest, the statute provided:[4]

> A peace officer who has reasonable cause to believe that a person was operating a vehicle upon a public highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state and that the person by the consumption of intoxicating liquor may have affected his or her ability to operate a vehicle . . . may require the person to submit to a preliminary chemical breath analysis administered pursuant to this subsection.

---

[4] Although the statute was amended by 1998 PA 350, effective October 1, 1999, those amendments did not materially alter this subsection.

We do not believe that the statute is helpful in resolving the present issue, because it addresses when a police officer may require a motorist to submit to a PBT test. The statute's plain language does not address when a police officer may require a motorist to perform roadside sobriety tests. In this case, defendant challenged the officer's initial instruction that she get out of the vehicle and perform the sobriety tests.

Next, the prosecutor argues that police officers have the inherent authority to order a motorist out of a vehicle during routine traffic stops for the officers' safety, without any reasonable suspicion that the motorist had committed a crime. *Pennsylvania v Mimms*, 434 US 106; 98 S Ct 330; 54 L Ed 2d 331 (1977); *People v Harmelin*, 176 Mich App 524, 526; 440 NW2d 75 (1989). Because Dillard's testimony contained no suggestion that he instructed defendant to get out of her vehicle for safety reasons, or that he ever entertained concerns about his own safety, we do not believe that this reasoning supports the police officer's actions in this case.

Finally, the prosecutor argues that the strong odor of intoxicants on a motorist's breath, standing alone, provides a police officer with a reasonable suspicion that the motorist has consumed intoxicating liquor. Defendant counters with two basic arguments why such an odor should be deemed insufficient to provide a police officer with reasonable suspicion. First, defendant argues that such an odor might be created by the consumption of desserts, candy, or mouthwash containing trace amounts of alcohol. On this point, we note Dillard's testimony at the suppression hearing that defendant's breath smelled *strongly* of intoxi-

cants. Giving deference to the officer's experience and common sense, *Nelson, supra* at 635-636, we disagree that consumption of the items listed by defendant would likely produce the type of strong odor that the officer encountered in this case. We believe that it is altogether reasonable for a police officer to suspect that the strong smell of intoxicants on a motorist's breath was caused by the consumption of intoxicating liquor.

Defendant next argues that the odor of intoxicants on a motorist's breath does not necessarily mean that the motorist's blood alcohol content exceeds legal limits.[5] While we agree with defendant on this point, we nevertheless hold that such an odor may give rise to a reasonable suspicion that the motorist has recently consumed intoxicating liquor, which may have affected the motorist's ability to operate a motor vehicle. A police officer need not suspect that a motorist's blood alcohol content is above or below a certain numerical limit before conducting roadside sobriety tests. Rather, he merely must have a reasonable suspicion that the motorist has consumed intoxicating liquor, which may have affected the motorist's ability to operate a motor vehicle. In order to confirm or dispel such reasonable suspicions, we hold that a police officer may instruct a motorist to perform roadside sobriety tests.

Defendant next argues that the police officer could not have developed a reasonable suspicion that she was operating a motor vehicle while under the influence of intoxicating liquor unless he visibly observed

---

[5] Dillard admitted at the suppression hearing that he could not determine, solely on the basis of the strong odor of intoxicants on defendant's breath, whether her blood alcohol content exceeded legal limits.

indications that she was driving while intoxicated, such as swerving, crossing lane markers, or other similar conduct. To support her contention, defendant relies on the language of the OUIL/UBAL statute, MCL 257.625(1); MSA 9.2325(1), and the criminal jury instructions, CJI2d 15.3. Defendant is incorrect. A motorist may be convicted of OUIL/UBAL if the motorist *either* operated a motor vehicle while under the influence of intoxicating liquor *or* operated the vehicle while having an unlawful blood alcohol level. MCL 257.625(1); MSA 9.2325(1); CJI2d 15.3. Further, a "defendant may be convicted of OUIL even if he is observed driving in a normal fashion." *People v Crawford*, 187 Mich App 344, 350; 467 NW2d 818 (1991), citing *People v Walters*, 160 Mich App 396, 402-403; 407 NW2d 662 (1987). Therefore, defendant's argument fails.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.