# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KEITH EDWARD NADEAU,

        Defendant-Appellant.

UNPUBLISHED
March 22, 2018

No. 336853
St. Clair Circuit Court
LC No. 16-001743-FH

Before: GLEICHER, P.J., and BOONSTRA and TUKEL, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of operating a vehicle while intoxicated, third offense (OUIL III), MCL 257.625(1), MCL 257.625(9)(c), driving with a suspended license, second offense, MCL 257.904(1), MCL 257.904(3)(b), and possession of an open container of alcohol in a vehicle, MCL 257.624a(1). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to a term of 3 to 20 years imprisonment for the OUIL III conviction, 12 months in jail for driving with a suspended license, and 90 days in jail for possessing an open container of alcohol in a vehicle, with credit for 213 days served. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

While on patrol on the evening of April 4, 2015, Michigan State Police Trooper Christopher Tuckey observed defendant's vehicle and believed that it may have had illegally tinted driver's side windows. Tuckey testified that he also could hear the vehicle's exhaust system through his closed vehicle window, and noticed that the exhaust system was louder when the car accelerated, leading Tuckey to believe that the exhaust system may have been defective. He decided to pull the vehicle over because he believed that the vehicle's front-window tint and loud exhaust system were possible traffic violations. Tuckey explained that only a four-inch window tint was allowed on front windows, and that he believed an exhaust system that he could hear with his windows up was excessively loud.

Tuckey indicated that, after he pulled the vehicle over, he saw that the front driver's side window was fully tinted, but he did not inspect the exhaust system. Tuckey became suspicious that defendant was intoxicated. Defendant refused field sobriety tests, and Tuckey eventually transported defendant to the hospital for a blood alcohol test. Defendant's blood alcohol count

-1-

(BAC) was tested at .192 grams of alcohol per 100 milliliters of blood, far in excess of the BAC required for an OUIL conviction. Another officer found an open and partially-consumed bottle of whiskey in defendant's vehicle before its impoundment.

Defendant moved to suppress evidence gathered from Tuckey's stop, and the subsequent search, of his vehicle, arguing that when Tuckey stopped defendant's vehicle, he lacked a reasonable suspicion that a crime had been committed. The trial court held an evidentiary hearing on defendant's motion. At the hearing, defendant testified that his front windows were not tinted and that his exhaust system had been recently installed. Defendant presented the trial court with photos of the vehicle, two witnesses denied that the front windows were tinted, and one of the witnesses corroborated that a new exhaust system had recently been installed. Tuckey testified that he believed a camera in his patrol vehicle was recording his stop of defendant, but he discovered at the hospital that the camera had "frozen" when he activated his vehicle's lights. Tuckey testified that he had been instructed to unplug and restart the camera in such a situation, and that when he did so, the previous video file was "corrupted;" therefore, no recording was available of Tuckey's stop of defendant. The trial court denied defendant's motion to suppress.

At trial, Tuckey again testified regarding the malfunctioning camera. Defense counsel cross-examined Tuckey concerning how the malfunction had occurred and what actions Tuckey had taken concerning the malfunction. Defendant testified and admitted that his driver's license was suspended; however, he stated that after he had pulled over in response to Tuckey's lights and siren, he exited the car, opened the bottle of whiskey, and drank half of it. Defendant thus denied being guilty of either OUIL or possessing an open container of alcohol in a vehicle. Defendant was convicted as stated. This appeal followed.

## II. DENIAL OF MOTION TO SUPPRESS

Defendant argues that the trial court erred by denying his motion to suppress evidence. We disagree. We review for clear error a trial court's findings at a suppression hearing. See *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). We review de novo the trial court's application of constitutional standards regarding searches and seizures to the facts. *Id*.

The United States and Michigan Constitutions prohibit unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. The "exclusionary rule" bars the introduction into evidence of materials seized and observations made during an unconstitutional search or seizure. See *People v Hawkins*, 468 Mich 488, 498-499; 668 NW2d 602 (2003). "Exclusion of improperly obtained evidence serves as a deterrent to police misconduct, protects the right to privacy, and preserves judicial integrity." *People v Hyde*, 285 Mich App 428, 439; 775 NW2d 833 (2009) (citation and quotation marks omitted).

A person has been "seized" when "a police officer has restrained the person's individual freedom." *People v Lewis*, 251 Mich App 58, 68-69; 649 NW2d 792 (2002). Generally, seizures are reasonable under the Fourth Amendment only if they are based on probable cause. *Id*. However, a citizen may be briefly stopped for investigation if a police officer has a "reasonable suspicion that criminal activity" may be taking place. *People v Oliver*, 464 Mich 184, 193; 627 NW2d 297 (2001), citing *Terry v Ohio*, 392 US 1, 16; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Such an investigatory stop "constitutes a seizure and requires specific and

articulable facts" demonstrating "a reasonable suspicion" that the person under investigation "has committed or is committing a crime." *People v Shankle*, 227 Mich App 690, 693; 577 NW2d 471 (1998). "Reasonable suspicion entails something more than an inchoate or unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *People v Rizzo*, 243 Mich App 151, 156; 622 NW2d 319 (2000), quoting *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996) (quotation marks omitted). To evaluate whether an officer had reasonable suspicion to make an investigatory stop, the "totality of the facts and circumstances" is considered on a case-by-case basis "based on commonsense judgments and inferences about human behavior." *People v Horton*, 283 Mich App 105, 109; 767 NW2d 672 (2009) (citation and quotation marks omitted).

Here, defendant argues that because there was evidence presented that the vehicle's exhaust system was new and that its front windows were not tinted, Tuckey could not have had a reasonable suspicion that defendant was violating traffic laws. We disagree. Overly technical reviews of the police officer's assessment are unwarranted, and deference should be afforded to the police officer's experience and knowledge. *Rizzo*, 243 Mich App at 155-156. Accordingly, all the facts known to Tuckey at the time he stopped defendant must be evaluated to determine whether these factors, given his experience, gave rise to a reasonable suspicion that defendant was involved in an illegal activity.

Tuckey reported that he had observed that defendant's front driver's side window was tinted, in possible violation of traffic ordinances,[1] when defendant first drove by him and then, following the stop, when he approached while defendant was sitting in the vehicle. Tuckey also noted that, when he was following defendant, the exhaust system on defendant's vehicle was so loud that he could hear it with his windows closed, raising the possibility that defendant was violating a traffic ordinance regarding the state of his exhaust system.[2] Because Tuckey believed that he had observed an illegally tinted front driver's window as defendant drove by, it was reasonable for Tuckey to suspect that defendant may have been violating a traffic ordinance.

---

[1] MCL 257.709(1)(a) provides that a person shall not operate a motor vehicle with

> [a] sign, poster, nontransparent material, window application, reflective film, or nonreflective film upon or in the front windshield, the side windows immediately adjacent to the driver or front passenger, or the sidewings adjacent to and forward of the driver or front passenger, except that a tinted film may be used along the top edge of the windshield and the side windows or sidewings immediately adjacent to the driver or front passenger if the material does not extend more than 4 inches from the top of the windshield, or lower than the shade band, whichever is closer to the top of the windshield.

[2] MCL 257.707b(1) provides that a "motor vehicle, while being operated on a highway or street, shall be equipped with an exhaust system in good working order to prevent excessive or unusual noise and shall be equipped to prevent noise in excess of the limits established in this act." MCL 257.707(3) also requires that a motor vehicle "be equipped with a properly operating exhaust system."

Likewise, because Tuckey observed that the volume of defendant's exhaust system was noticeably loud, it was reasonable for Tuckey to believe that defendant could have been violating traffic laws prohibiting operating a vehicle with a defective or excessively loud exhaust system. Tuckey's testimony demonstrates his reasonable and particularized suspicion that defendant was violating traffic laws, thus justifying the traffic stop to investigate the possible violations. *Shankle*, 227 Mich App at 693.

Defendant correctly asserts that there was evidence presented at the evidentiary hearing that he did not have tinted front windows, and that his exhaust system had been recently installed. Because there was evidence that the exhaust system was at most 10 months old and that the front windows may not have been tinted, it was possible at that time that defendant might not be convicted of these infractions. But Tuckey was not required to show that defendant was guilty of a traffic violation or even that there was probable cause that a crime had been committed. See *Rizzo*, 243 Mich App at 156. Rather, "[t]he dispositive question . . . is not whether an actual violation occurred, but whether the officer had a reasonable suspicion that a violation may have occurred." *People v Fisher*, 463 Mich 881, 882; 617 NW2d 37 (2000) (CORRIGAN, J., concurring).

Regardless of whether the vehicle's front windows were actually tinted or whether its exhaust system was impermissibly loud, defendant testified that the rear windows of the vehicle were tinted, and another defense witness described the new exhaust system as louder because of its particular design. This testimony actually supports the reasonableness of Tuckey's suspicion. *Horton*, 283 Mich App at 109. The trial court did not err by denying defendant's motion to suppress evidence of defendant's traffic stop.

## III. FAILURE TO PRODUCE VIDEO RECORDING

In a Standard Four brief,[3] defendant argues that the prosecution failed to provide him in discovery with a video of his traffic stop recorded from the police vehicle and that it failed to produce such a video at trial. A defendant is entitled to have produced at trial all evidence bearing on guilt or innocence that is within the prosecutor's control. *People v Daniel*, 207 Mich App 47, 56; 523 NW2d 830 (1994). The prosecution's suppression of requested evidence favorable to an accused violates due process "where the evidence is material . . . to guilt," "irrespective of the good faith or bad faith of the prosecution." *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

> [A] defendant's due process rights to discovery may be implicated: (1) where a prosecutor allows false testimony to stand uncorrected; (2) where the defendant served a timely request on the prosecution and material evidence favorable to the accused is suppressed; or (3) where the defendant made only a general request for

---

[3] A supplemental appellate brief filed in propria persona in a criminal case pursuant to Administrative Order 2004-6, Standard 4.

-4-

exculpatory information or no request and exculpatory evidence is suppressed. [*People v Tracey*, 221 Mich App 321, 324; 561 NW2d 133 (1997).]

MCR 6.201(B)(1) mandates that the prosecuting attorney must, upon request, provide each defendant "any exculpatory information or evidence known to the prosecuting attorney."

Here, Tuckey testified both at the suppression hearing and at trial that there was no recorded video of his traffic stop of defendant from the camera in his patrol vehicle because the recording system had malfunctioned. Tuckey testified that this was the first time his recording system had malfunctioned and that he did not know that the memory file was corrupted until he tried to download the video while he was writing his report. He stated that the issue repeated itself within two weeks until he replaced the memory card, and he denied having intentionally deleted video of the traffic stop.

"Where evidence is suppressed, the proper considerations are whether (1) suppression was deliberate, (2) the evidence was requested, and (3) in retrospect, the defense could have significantly used the evidence." *People v Davis*, 199 Mich App 502, 514; 503 NW2d 457 (1993), overruled on other grounds by *People v Grissom*, 492 Mich 296; 821 NW2d 50 (2012).

Nothing in the record supports the inference that the loss of the recording was anything other than an inadvertent technological failure. Although defendant implies that Tuckey deliberately destroyed recorded video evidence that would have aided his case, he has not carried his burden of showing either "that the evidence was exculpatory or that the police acted in bad faith." *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992). Without evidence of intentional suppression or bad faith, "a loss of evidence that occurs before a defense request for its production does not require reversal." *Id.*, citing *People v Albert*, 89 Mich App 350, 352; 280 NW2d 523 (1979).

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra
/s/ Jonathan Tukel

-5-