# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MICHAEL ANTHONY MCEWEN,

       Defendant-Appellant.

UNPUBLISHED
May 17, 2018

No. 338100
Calhoun Circuit Court
LC No. 2014-003165-FH

Before: MURRAY, C.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his conviction, following a jury trial, of resisting or obstructing a police officer resulting in injury; MCL 750.81d(2). The trial court sentenced defendant to 270 days in jail with credit for 100 days served. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from a traffic stop on December 23, 2013 in Albion, Michigan. On that day, Deputy Ronald Leggitt of the Calhoun County Police Sheriff's Department was on patrol, dressed in full uniform and driving a marked patrol car. At approximately 1:30 a.m., Leggitt observed a blue Chevrolet Impala facing southbound on State Street at the intersection of Austin Avenue. This was a "T" intersection, meaning that a vehicle in the Impala's position would have to turn either left or right on Austin Avenue. Positioning his vehicle to make a right-hand turn, Leggitt pulled up next to the Impala. Leggitt noticed that the driver—defendant—was looking straight ahead, holding onto the steering wheel. Defendant was not looking to the left or right to see if cars were coming from either direction. Leggitt testified that he found this behavior to be "suspicious or a bit odd."

Upon further inspection of the vehicle, Leggitt noticed that it had no working license plate lights, so he decided to "turn around and start to follow this car potentially to make a traffic stop on it." Leggitt stated that, after observing the vehicle follow what he deemed to be "increasingly odd, more suspicious" driving patterns, he "turn[ed] on [his] overhead emergency lights because [he was] going to pull the vehicle over for, the odd behavior, but two, it [had] no license plate lights which are required by state law." Leggett also shined his spotlight on the vehicle to further gain the driver's attention. Defendant did not immediately pull over in response to Leggitt's activation of his vehicle's emergency lights and spotlight. After Leggitt followed defendant for 2 or 3 city blocks, defendant pulled over into a parking lot. Defendant

-1-

testified that he never saw Leggitt's police car or lights until he was in the parking lot. Defendant remained in his vehicle, and even though defendant was alone in the vehicle, Leggitt testified that he could hear yelling coming from inside the car.

Leggitt left his vehicle and approached defendant's car. As Leggitt arrived at the driver's side of defendant's car, defendant started to yell at him, demanding to know why Leggitt had pulled him over. Leggitt testified that he explained to defendant that he was being stopped for his faulty license plate lights, to which defendant's response was, "This is f*****g bulls**t." Leggitt testified that he asked defendant for his driver's license, registration, and proof of insurance, but that defendant kept on repeating, "This is f*****g bulls**t." Defendant testified, to the contrary, that Leggitt refused to tell him why he was being pulled over despite defendant repeatedly inquiring about the reason. Defendant also testified that his vehicle had been properly inspected during an oil change and was fully functional mere days before the incident. Defendant also stated that his license plate lights were inspected days after the incident and that they were working properly at that time.

Based on defendant's level of anger, Leggitt decided to open the driver's side door of the Impala. Defendant told Leggitt "not to f*****g open his door." Leggitt explained to him that he needed to calm down so that Leggitt could complete the traffic stop; otherwise, he would have to place defendant in handcuffs for their safety. Defendant calmed down slightly, so Leggitt explained to him again that he was pulled over because his license plate lights were not working properly, which was against state law in Michigan. Defendant responded by saying, "This is f*****g bulls**t. You are pulling me over for no f*****g reason." While conversing with defendant, Leggitt testified that he smelled alcohol from inside the vehicle and noticed that defendant's eyes were glassy and bloodshot.

Leggitt testified that defendant eventually found his driver's license, but that instead of handing it to Leggitt, defendant threw it at him. Defendant denied throwing his driver's license, testifying that the license slipped from his hand and fell into the snow. By this time, three other officers had arrived at the scene. Leggitt testified that he believed that defendant was operating his vehicle under the influence of alcohol, and ordered defendant to step out of his vehicle, to which defendant responded "f**k off." To help assist Leggitt, Officer Rich Cuatt of the Albion Department of Public Safety came to the driver's side of the vehicle, pulled out his Taser, turned it on, and pointed it at defendant. Defendant finally got out of the vehicle and yelled at a nearby woman to "[r]ecord this, record this. They are brutally harassing me." Leggitt did not respond other than to ask defendant to turn around and put his hands behind his back. Defendant complied, and Leggitt was able to secure the handcuffs, telling defendant that he was under arrest for resisting and obstructing his investigation.

Defendant resisted Leggitt's attempts to place him inside the patrol car, stiffening his body and refusing to sit in the back seat. Cuatt attempted to assist Leggitt in placing defendant in the back of the patrol car by entering the backseat from the driver's side and pulling defendant toward the vehicle by his belt. With Cuatt pulling defendant from behind and Leggitt pushing from the front, defendant began to enter the car; however, without any warning, defendant kicked Leggitt in his left knee while wearing big snow boots. Leggitt described this kick as intentional, stating that defendant "cocked back" his leg and kicked out. Defendant denied intentionally kicking Leggitt. He did recall his legs swinging up and stated, "You being pulled

back into a police car you have no choice but your legs to swing up [sic]. So yeah my legs did swing up." Defendant admitted that it took physical force to place him into the vehicle.

After defendant kicked Leggitt, Leggitt fell to the ground. Another officer testified that he heard someone say "ouch" from the other side of the police car and that when he went around the vehicle, he saw Leggitt sitting on the ground. Two other officers took over securing defendant while Leggitt dragged himself out of the way. An ambulance was called to assist with Leggitt's injuries because he could not stand. Defendant also began to yell about having sustained a shoulder injury. By the time Leggitt arrived at the hospital, his knee was significantly swollen.

Officer Ben Hess, a road patrol deputy with the Calhoun County Sheriff's Department, was instructed to transport defendant to the hospital to be examined for injuries. Although defendant was still yelling and screaming, Hess was able to get defendant into his patrol car for transport. On the way to the hospital, defendant continued to yell, saying that he was going to sue the Sheriff's Department and the officers involved. Additionally, defendant made threatening statements and yelled obscenities toward Hess. Defendant also kicked the patrol car door and cage as he was being transported to the hospital. While at the hospital, defendant continued to yell even after being told several times by officers and hospital staff that he was causing a scene. Defendant was cleared by the emergency room doctor with no injuries and taken to jail.

Leggitt required extensive surgery on his knee and could not return to full duty for four months. Additionally, he was told by his orthopedic surgeon that he would need a full knee replacement in approximately 10 years.

The jury convicted defendant as described. This appeal followed. On appeal, defendant makes several challenges to the sufficiency of the evidence against him.

## II. STANDARD OF REVIEW

We review de novo challenges to the sufficiency of evidence, viewing the evidence, and all reasonable inferences therefrom, in the light most favorable to the prosecution. *People v Bennett*, 290 Mich App 465, 471; 802 NW2d 627 (2010). We also review de novo as a question of law whether an officer's suspicion is reasonable under the Fourth Amendment. *People v Bloxson*, 205 Mich App 236, 245; 517 NW2d 563 (1994).

## III. ANALYSIS

The test for sufficiency of the evidence is "whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 513-514, 489 NW2d 748 (1992), mod 441 Mich 1201 (1992) (quotation marks and citation omitted). "A prosecutor need not present direct evidence of a defendant's guilt. Rather, [c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (quotation marks and citation omitted; alteration in original). In reviewing the sufficiency of the evidence, this Court must not interfere with the jury's role as fact-finder.

*People v Meshell*, 265 Mich App 616, 619; 696 NW2d 754 (2005). "The credibility of witnesses and the weight accorded to evidence are questions for the jury, and any conflict in the evidence must be resolved in the prosecutor's favor." *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009).

Defendant first argues that the evidence presented at trial was insufficient to establish a permissible traffic stop. We disagree. Leggitt testified that defendant's license plate lights were not functioning properly as required by state law. MCL 257.686(2) provides,

> Either a tail lamp or a separate lamp shall be constructed and placed so as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear. A tail lamp or tail lamps, together with any separate lamp for illuminating the rear registration plate, shall be wired so as to be lighted whenever the head lamps or auxiliary driving lamps are lighted.

A police officer may stop and detain a driver when the officer witnesses a civil infraction violation. See *People v Rizzo*, 243 Mich App 151, 156-157; 622 NW2d 319 (2000) (concluding that a broken taillight on a motorist's vehicle, which constituted a defective equipment violation, provided reasonable suspicion for an investigatory stop); see also *People v Williams*, 236 Mich App 610, 612; 601 NW2d 138 (1999) ("[T]o effectuate a valid traffic stop, a police officer must have an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of the law."). Leggitt testified that defendant's vehicle did not have functioning license plate lights, while defendant testified that his vehicle had been inspected during an oil change and was fully functional mere days before the incident. Despite the apparently conflicting testimony, the jury found Leggitt's testimony to be credible. Matters involving the weighing of evidence and determining the credibility of witnesses are left to the jury. See *Wolfe*, 440 Mich at 514-515; see also *Meshell*, 265 Mich App at 619. The evidence was therefore sufficient to conclude that Leggitt had reasonable suspicion to believe that defendant had committed a civil infraction, and to allow a rational jury to conclude that the traffic stop was valid. See *Wolfe*, 440 Mich at 514-515.

Defendant also argues that the evidence presented at trial was insufficient to establish that defendant kicked Leggitt and caused Leggitt's injuries. Again, we disagree. Once again, there was conflicting testimony on this issue. Leggitt testified that defendant kicked him in his left leg. Defendant denied intentionally kicking Leggitt. Resolution of the issue again required an assessment of witness credibility. The jury found that Leggitt's testimony was credible, and we will not interfere with that determination. *Meshell*, 265 Mich App at 619; *Harrison*, 283 Mich App at 378. The evidence was sufficient to enable the jury to conclude that defendant kicked Leggitt.

The circumstantial evidence was also sufficient to allow the jury to conclude that defendant's kick caused Leggitt's injury. *Williams*, 294 Mich App at 471. Leggitt stated that once defendant kicked him, he felt his kneecap slide off and heard "a pop and a snap." Leggitt immediately fell to the ground in pain. Another officer also testified that he heard someone say "ouch" from the other side of the car and that he then saw Leggitt sitting on the ground. Additionally, an ambulance was called to assist with Leggitt's injuries because he could not

stand. By the time he arrived at the hospital, Leggitt's knee had swollen significantly. Leggitt had to undergo extensive surgery on his knee and did not return to full duty for four months. In sum, viewing the evidence in the light most favorable to the prosecution, the evidence supports the conclusion that defendant physically kicked and injured Leggitt. See *Wolfe*, 440 Mich at 514-515.

Finally, defendant argues that the evidence was insufficient to allow the jury to conclude that he resisted or obstructed Leggitt. We disagree. Under MCL 750.81d(1), the elements required to establish a violation are: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010). Under MCL 750.81d(2), the prosecution is required to establish, in addition to these two elements, that defendant's actions caused the police officer an injury requiring medical treatment.

The jury found that Leggitt's testimony was credible. *Harrison*, 283 Mich App at 378. The record evidence supports the conclusion that defendant assaulted, battered, and wounded Leggitt. Further, defendant admits that it took physical force to place him into Leggitt's police car after he failed to follow police officers' orders to enter the police vehicle. This action alone would qualify as "obstructing" a police officer. The term "obstruct," as defined in the statute, "includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a). In addition to Leggitt's testimony, several officers testified that defendant resisted being placed in the back of the patrol car. The prosecution presented sufficient evidence that defendant resisted or obstructed Leggitt.[1]

Finally, Leggitt received medical care for his knee injury after the incident with defendant. In fact, Leggitt had to undergo surgery on his knee. Clearly, Leggitt's bodily injury required medical attention or medical care, as Leggitt sought out and actually received such care because of defendant's actions. Therefore, the third element of the statute is satisfied. Given the evidence, a reasonable jury could conclude that the prosecution satisfied its burden of proving the elements of resisting arrest causing bodily injury, MCL 750.81d(2), beyond a reasonable doubt. See *Wolfe*, 440 Mich at 514-515.

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence for the jury to find that Leggitt's traffic stop was reasonable because defendant had committed a civil infraction. Further, there was sufficient evidence for the jury to convict defendant of resisting or obstructing Leggitt, causing him physical injury that required medical treatment.

---

[1] Defendant does not argue that he did not know that Leggitt, who was wearing full police uniform and driving a marked police vehicle with flashing emergency lights, was a police officer.

Affirmed.

/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra