*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

DUSTIN ROSS ANDERSON,

        Defendant-Appellee.

FOR PUBLICATION
December 23, 2025
9:10 AM

No. 369614
Livingston Circuit Court
LC No. 2023-000336-AR

Before: YATES, P.J., and BOONSTRA and YOUNG, JJ.

YATES, P.J.

Approximately one hour after Officer Ray Prater of the Pinckney Police Department found defendant, Dustin Ross Anderson, visibly drunk at his father's house, Officer Prater ran a license-plate check on a vehicle he was following and learned that the vehicle was registered to defendant. Officer Prater followed the vehicle for more than a mile, and ultimately stopped the vehicle based on suspicion that the driver was operating the vehicle while intoxicated. Officer Prater discovered that defendant was, in fact, at the wheel of the vehicle, and in short order Officer Prater placed him under arrest for operating while intoxicated. But after defendant was formally charged, the district court dismissed the charge of operating a motor vehicle while intoxicated, MCL 257.625(1),[1] for the reason that the stop of defendant's vehicle was improper. The prosecutor then sought leave to appeal to the circuit court, which conducted a hearing and denied the application for leave to appeal after analyzing whether there was reasonable suspicion to justify a stop. Now, on appeal by leave granted,[2] the prosecutor contends that the traffic stop was permissible. Because we conclude that Officer Prater's observations of defendant in a drunken state no more than one hour before the stop furnished the officer with reasonable suspicion to stop defendant's vehicle, we reverse the orders

---

[1] Defendant was charged with a misdemeanor, so the district court would have been the trial court for the charge. Thus, we will refer to that court as either the trial court or the district court.

[2] *People v Anderson*, unpublished order of the Court of Appeals, entered July 16, 2024 (Docket No. 369614).

of suppression and dismissal, and we remand the case to the district court for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

On the night of April 6, 2023, Officer Prater conducted a traffic stop of a vehicle driven by defendant. Approximately one hour earlier, Officer Prater had been dispatched to a residence for a medical emergency. The injured person was defendant's father, who had fallen down the stairs. While at the residence, Officer Prater spoke with defendant, who admitted he had been drinking. Officer Prater noticed other indications that defendant was intoxicated. No more than an hour after Officer Prater left the residence, he saw a vehicle on the road and ran a license-plate check, which indicated that the vehicle was registered to defendant. After the officer saw that vehicle make an abrupt right turn, he stopped the vehicle. During the stop, defendant was arrested, and a subsequent blood draw established that defendant had a blood alcohol level of 0.116 grams of alcohol per 100 milliliters of blood. Defendant thereafter was charged with one count of operating a motor vehicle while intoxicated, MCL 257.625(1).

On June 29, 2023, defendant moved to suppress evidence. In the motion, defendant's main argument was that his arrest was not supported by probable cause, so all of the evidence stemming from his arrest must be suppressed. Specifically, defendant sought suppression of the blood draw obtained after his arrest, as well as all evidence that resulted from "any of the field sobriety tests." Defendant also made brief references to the legality of the traffic stop.

The prosecutor responded, stating that Officer Prater had probable cause to arrest defendant because defendant admitted to consuming alcohol, smelled of intoxicants, had been at a residence with empty beer cans, was observed with bloodshot, watery eyes in that earlier interaction, slurred his speech at times, and "exhibited a number of clues on the walk and turn and one leg stand tests, suggesting reduced ability to divide his attention as well as reduced balance and coordination." The prosecutor further asserted that the traffic stop was justified because Officer Prater knew the vehicle was registered to defendant and had observed defendant intoxicated just an hour earlier.

The district court conducted an evidentiary hearing on August 1, 2023, taking the testimony of Officer Prater and defendant, and watching footage from Officer Prater's dash camera. Officer Prater testified that he was dispatched to a residence where he encountered defendant. He reported that defendant admitted that he had been drinking, had bloodshot, watery eyes, and a strong smell of intoxicants on his breath. The officer also saw alcoholic beverages "all over the place." Officer Prater believed defendant was intoxicated and would not have been able to safely operate a motor vehicle, but he did not subject defendant to any sobriety tests at that point.

Officer Prater testified that he again had contact with defendant "[a]bout 45 minutes to an hour" later. He saw a vehicle on the road, so he checked the license plate and discovered that that vehicle was registered to defendant.[3] While Officer Prater was following defendant's vehicle, that

---

[3] Even though the parties do not address this issue, we note that Officer Prater's scan of defendant's license plate was proper as a matter of law. See *People v Jones*, 260 Mich App 424, 427-428; 678

vehicle made an abrupt right turn, and at that point Officer Prater initiated a traffic stop. According to Officer Prater, he made the traffic stop because (1) the vehicle was registered to defendant and, earlier that night, Officer Prater had seen defendant exhibiting signs of intoxication, (2) the route taken by defendant's vehicle involved backtracking, and (3) the vehicle made an abrupt right turn after it passed another police car parked on the street.

Defendant testified that he saw Officer Prater follow him for about 1.5 miles, starting when he pulled out from his father's residence. Defendant stated that he took the route he chose because he needed to check on a friend and drop off a passenger at that person's car.

In closing comments at the suppression hearing, the prosecutor argued that the officer had just been with defendant and noticed that he was intoxicated, and then the officer saw defendant's vehicle on the road less than an hour later. Defense counsel contended that defendant did nothing wrong on the abrupt turn and that an hour had passed since Officer Prater saw defendant. "[T]hey wanted a reason to pull him over because they saw him drinking before, and I don't think they had probable cause to do so based on the law."

The trial court ruled that Officer Prater lacked "probable cause or reasonable suspicion" to stop defendant. The trial court noted that the traffic stop "was based on, allegedly, the abrupt right turn," but the trial court did not "find the abrupt right turn reasonable under these circumstances," so the trial court dismissed the case. The prosecutor moved for reconsideration, which the district court denied.

The prosecutor then sought leave to appeal to the circuit court.[4] The prosecutor contended that defendant misled the district court because defendant's motion focused on whether the arrest was supported by probable cause, but the district court instead focused on the legality of the traffic stop. The prosecutor further asserted that the evidence at the suppression hearing established that Officer Prater had a reasonable suspicion to believe defendant was operating a motor vehicle while intoxicated when the officer made the traffic stop. Conversely, defendant insisted that the district court's findings were supported by the evidence and were not clearly erroneous, and the prosecutor had sufficient notice of the issue on which the trial court granted suppression of the evidence.

At a hearing on November 30, 2023, the circuit court requested documents from the district court and stated that it would render a decision. On January 19, 2024, the circuit court denied the prosecutor's application for leave to appeal, concluding that the district court correctly analyzed

---

NW2d 627 (2004) ("A police officer may properly run a computer check of a license plate number in plain view even if no traffic violation is observed and there is no other information to suggest that a crime has been or is being committed [because] there is no probable cause or articulable suspicion requirement to run a computer check of a license plate number in which there is no expectation of privacy.").

[4] The prosecution was required to apply for leave to appeal because it missed the deadline for filing an appeal of right. The prosecutor attributed the lack of timeliness to "an apparent communication breakdown," which resulted in the prosecutor being unaware that the trial court had issued the final order until after the time for filing an appeal of right had expired.

whether there was reasonable suspicion to conduct the traffic stop, even if defendant had muddied the waters with references to whether probable cause justified defendant's arrest. The circuit court ruled that the district court's factual findings were supported by the evidence. Without giving any deference to the district court's finding, the circuit court held that the traffic stop was not supported by reasonable suspicion. It noted that there was no evidence of any civil infractions that defendant committed prior to being stopped, and Officer Prater had not witnessed any swerving, crossing the centerline, or inappropriate lane changes. The circuit court said that a vehicle making a turn after appropriately using its signal and after driving in a circuitous route around town did not support a reasonable and articulable basis to believe criminal activity was being committed. It also noted that, although Officer Prater knew that the vehicle was registered to defendant, he did not know if defendant was actually the one driving. The circuit court stated that Officer Prater testified that he had observed defendant to be drunk an hour before the stop, but the court described it merely as a "hunch" that defendant was still intoxicated when he was driving. The circuit court held that the district court's factual findings were not clearly erroneous, and on de novo review, the circuit court drew the same legal conclusion as the district court, commenting that there was no legal basis for the traffic stop. Therefore, the circuit court denied the prosecutor's application for leave to appeal. This appeal by leave granted followed.

## II. LEGAL ANALYSIS

On appeal, the prosecution asserts that the district court erred by determining that Officer Prater lacked reasonable suspicion to justify stopping defendant's vehicle. The prosecution insists that because Officer Prater observed defendant showing signs of intoxication no more than an hour before the traffic stop, Officer Prater reasonably suspected defendant was intoxicated when he was driving. The district court's factual findings are reviewed for clear error, but whether the police officer had a reasonable suspicion is a question of law that we review de novo. *People v Bloxson*, 205 Mich App 236, 245; 517 NW2d 563 (1994). "A traffic stop is justified if the officer has an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law." *People v Mazzi*, 326 Mich App 279, 292; 926 NW2d 359 (2018) (quotation marks and citation omitted). This involves a "fact specific inquiry that is determined on a case-by-case basis." *People v Pagano*, 507 Mich 26, 32; 967 NW2d 590 (2021). "A determination regarding whether a reasonable suspicion exists must be based on commonsense judgments and inferences about human behavior." *Id.* (quotation marks and citation omitted).

"[R]easonable suspicion requires a lesser showing than probable cause," but "it still entails something more than an inchoate or unparticularized suspicion or hunch[.]" *People v Armstrong*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 165233); slip op at 16. The officer "must be able to articulate the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *People v Kavanaugh*, 320 Mich App 293, 306; 907 NW2d 845 (2017). This Court should consider "the totality of the circumstances" and "be careful not to apply overly technical reviews of a police officer's assessment of whether criminal activity is afoot[.]" *People v Barbarich*, 291 Mich App 468, 474; 807 NW2d 56 (2011). The United States Supreme Court has stated that "the reasonable suspicion inquiry falls considerably short of 51% accuracy, for, as we have explained, to be reasonable is not to be perfect . . . ." *Kansas v Glover*, 589 US 376, 381; 140 S Ct 1183; 206 L Ed 2d 412 (2020) (quotation marks and citation omitted).

This Court has described what constitutes reasonable suspicion that a person is intoxicated. A "strong odor of intoxicants on a motorist's breath, standing alone, can provide a police officer with a reasonable, articulable, particularized suspicion that the motorist was driving while under the influence of intoxicating liquor." *People v Rizzo*, 243 Mich App 151, 158; 622 NW2d 319 (2000). While "the odor of intoxicants does not necessarily mean that the motorist's blood alcohol content exceeds legal limits[,]" an odor of intoxicants "may give rise to a reasonable suspicion that the motorist has recently consumed intoxicating liquor, which may have affected the motorist's ability to operate a motor vehicle." *Id*. at 161. In *Rizzo*, this Court rejected the argument that the police "could not have developed a reasonable suspicion that [the defendant] was operating a motor vehicle while under the influence of intoxicating liquor unless [the police officer] visibly observed indications that [the defendant] was driving while intoxicated, such as swerving, crossing lane markers, or other similar conduct." *Id*. at 161-162.

Here, the district court erred when it concluded that Officer Prater did not have a reasonable suspicion that defendant was operating his vehicle while intoxicated. Officer Prater testified at the suppression hearing about the signs of intoxication that he observed from defendant an hour before the stop, including defendant's bloodshot and watery eyes and the strong smell of intoxicants on defendant's breath. Additionally, defendant admitted to Officer Prater that he had been drinking. Indeed, both the circuit court and defendant on this appeal concede that defendant was "drunk" at the time he interacted with Officer Prater. Defendant also concedes on appeal that Officer Prater's observations of defendant's intoxication would have constituted reasonable suspicion of operating a motor vehicle while intoxicated if defendant had driven his car away from his father's residence while Officer Prater was at the house. But defendant contends that the passage of 45 to 60 minutes caused that reasonable suspicion to dissipate. That contention cannot be squared with the relatively low threshold for establishing reasonable suspicion.

Officer Prater was "able to articulate the specific reasonable inferences" that he drew from the facts, *Kavanaugh*, 320 Mich App at 306, i.e., defendant was operating while intoxicated based on the fact that Officer Prater had observed defendant to be intoxicated in an interaction that took place no more than an hour earlier. That is "something more than an inchoate or unparticularized suspicion or hunch," *Pagano*, 507 Mich at 32 (quotation marks and citation omitted), and Officer Prater's belief exceeded the low threshold of "considerably" less than 51% accuracy. *Glover*, 589 US at 381. Defendant suggests that he could "possibly have sobered up" in the time between his interaction with Officer Prater and the traffic stop. That possibility, however, does not negate the reasonableness of Officer Prater's suspicion, as "to be reasonable is not to be perfect . . . ." *Id*.

The district court made several errors in reaching the conclusion that Officer Prater lacked reasonable suspicion to justify the traffic stop. First, the district court clearly erred when it found that the traffic stop took place "an hour to an hour and a half" after the interaction between Officer Prater and defendant. Officer Prater testified that it was between 45 and 60 minutes, and there was no evidence that the two interactions were more than one hour apart. In addition, the district court clearly erred when it found that the traffic stop "was based on, allegedly, the abrupt right turn[.]" Officer Prater testified that there were three grounds for the traffic stop. One was the abrupt right turn, but the stop was also based on the route defendant travelled in his vehicle and the interaction between Officer Prater and defendant earlier in the night when defendant exhibited telltale signs of intoxication.

In explaining its decision that Officer Prater did not have reasonable suspicion to initiate a traffic stop, the district court mentioned the encounter between defendant and Officer Prater earlier in the night, but focused largely on Officer Prater's observations of defendant's driving, especially the abrupt right turn. Such heavy reliance on the observations of defendant's driving is improper, as the determination requires an analysis of the totality of the circumstances. *Barbarich*, 291 Mich App at 474. Additionally, this Court has rejected the claim that "the police officer could not have developed a reasonable suspicion that [the defendant] was operating a motor vehicle while under the influence of intoxicating liquor unless [the police officer] visibly observed indications that [the defendant] was driving while intoxicated, such as swerving, crossing lane markers, or other similar conduct." *Rizzo*, 243 Mich App at 161-162. Officer Prater had reasonable suspicion to initiate the traffic stop before he saw the abrupt right turn, based on the interaction he had with defendant less than an hour earlier. The district court may be correct that the right turn, by itself, did not provide reasonable suspicion to initiate the traffic stop, but the district court erred when it held that Officer Prater did not have reasonable suspicion for that stop, minimizing the evidence that the officer had seen defendant exhibiting signs of intoxication an hour earlier.[5]

Given the totality of the circumstances, Officer Prater had reasonable suspicion to believe that defendant was operating a motor vehicle while intoxicated when the officer saw defendant's vehicle on the road within an hour of observing him exhibiting several signs of intoxication. Even if no observations Officer Prater made while following defendant's vehicle—including the abrupt right turn—provided reasonable suspicion to initiate the traffic stop, the stop was still permissible as a matter of law. Thus, we reverse the district court's order concluding that Officer Prater lacked reasonable suspicion to initiate a traffic stop of defendant's vehicle and dismissing the operating-while-intoxicated charge against defendant, and we remand for further proceedings consistent with this opinion.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Mark T. Boonstra

---

[5] In its order denying leave to appeal, the circuit court expressed concern that when Officer Prater initiated the traffic stop, he only knew that the vehicle was registered to defendant, and did not know if defendant was actually driving the vehicle at that time. But that concern is misplaced in a reasonable-suspicion analysis. In a case involving reasonable suspicion to initiate a traffic stop, the United States Supreme Court held that it was a "commonsense inference that [the registered owner] was likely the driver of the vehicle[.]" *Glover*, 589 US at 381.